**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. | § | |
| CHRISTINE MARTINO-FLEMING, Relator, | § | |
| | § | |
| and | § | |
| | § | |
| COMMONWEALTH OF MASSACHUSETTS, | § | |
| ex rel. CHRISTINE MARTINO-FLEMING, | § | |
| | § | Civil Action No. 15-cv-13065 |
| Relator, | § | |
| | § | |
| vs. | § | |
| | § | |
| SOUTH BAY MENTAL HEALTH CENTER, | § | |
| INC., COMMUNITY INTERVENTION | § | |
| SERVICES, INC., COMMUNITY | § | |
| INTERVENTION SERVICES HOLDINGS, | § | |
| INC., H.I.G. GROWTH PARTNERS, H.I.G. | § | |
| CAPITAL, LLC., PETER J. SCANLON, AND | § | |
| KEVIN P. SHEEHAN | § | |

Defendants.

## MEMORANDUM IN SUPPORT OF RELATOR'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES

The central dispute in this case is whether Defendant South Bay Mental Health Center, Inc. ("South Bay") submitted claims for payment to the Massachusetts Medicaid Program ("MassHealth") and its contractors for mental health services provided by unlicensed, unqualified, and unsupervised clinicians in violation of MassHealth regulations, the False Claims Act, 31 U.S.C. §§ 3729 *et seq.* and the Massachusetts False Claims Act, Mass. Gen. Laws c. 12, §§ 5A *et seq.* Accordingly, Relator Christine Martino-Fleming propounded several interrogatories, including one requesting that South Bay identify its licensed and unlicensed clinicians, supervisors, and directors, along with their qualifications, dates of employment, and other specified information about each South Bay clinician.

1

Interrogatory No. 2 calls for information that South Bay was required to have at the time it made the claims for payment. But instead of providing substantively complete written answers to this interrogatory substantiating its billing, South Bay produced hundreds of thousands of pages of business records—many of which are handwritten and barely legible.  South Bay then evoked Fed. R. Civ. P. 33(d), claiming that "said documents speak for themselves" and supplemented with lists of documents from which Relator could purportedly find answers to the interrogatory. In doing so, South Bay seeks to place the burden on Relator to go through its documents to piece together its answers to her interrogatory, without even attempting to meet the threshold criteria to invoke Rule 33(d).

The information called for by Interrogatory No. 2 cannot be ascertained from the materials South Bay has identified as being responsive. Moreover, the relevant time-period identified in the interrogatories is January 1, 2009, through the present. To the extent that South Bay did provide two spreadsheets from which some of the information requested can be derived, those documents only encompass claims made between November 2015 and August 2018. The spreadsheets relied on in South Bay's response plainly do not provide all of the information requested, especially for example, the six-year period of time between January 2009 and November 2015 as well as the information about educational and clinical experience requested in the interrogatory. Accordingly, South Bay has not and cannot satisfy the Rule 33(d) criteria. Relator respectfully requests that this Court order South Bay to serve an amended answer to Interrogatory No. 2 providing the factual information requested by the interrogatory and all of its subparts.

# I.
# BACKGROUND

## A.  MassHealth Requirements and Plaintiffs' Allegations

MassHealth regulations require that all clinicians providing billable mental health center services meet specific qualification criteria. 130 C.M.R. § 429.424. For instance, counselors must hold a master's degree in a specified subspecialty and must have had two years of full-time supervised clinical experience after obtaining the master's degree. *Id*. at § 429.424(F)(2). Even when a clinician meets those criteria, she must also be licensed to provide mental health services in her discipline, or else be directly and continuously supervised by someone who is. *Id*. Unlicensed counselors "must be under the direct and continuous supervision" of a psychiatrist, psychologist, social worker, or psychiatric nurse. *Id*. at § 429.424(F)(1).

Relator and the Commonwealth of Massachusetts (collectively, "Plaintiffs") allege that from 2009 to the present, the majority of South Bay's clinicians were unlicensed, unqualified, and unsupervised, in violation of MassHealth regulations. Plaintiffs also allege that South Bay's supposed supervisors, clinic directors, and regional directors were similarly unqualified, unlicensed, or otherwise disengaged. Plaintiffs further allege that as a matter of company policy, even at facilities that employed properly-licensed supervisors capable of providing the required supervision for unlicensed staff, South Bay's clinicians did not receive any supervision from a properly-licensed supervisor whatsoever during the first 90 days of their employment. As a result, Defendants submitted or caused to be submitted false claims for payment to MassHealth and its contractors, billing for services as if they had been provided by qualified, properly supervised mental health professionals in full compliance with the law. Pls' Am. Consolidated Compl., ECF No. 201.

### B.  Relator's Interrogatories and South Bay's Answers

In order to ascertain exactly which of South Bay's personnel were not properly credentialed, licensed, and supervised—as well as the corresponding claims for payment for services that were false—Relator propounded interrogatories related to the qualifications and licensure of South Bay staff. Relator now moves for an order compelling a full and complete response to Interrogatory No. 2. The interrogatory (which includes subparts as allowed by the Local Rules) requests that South Bay identify each of its licensed and unlicensed personnel at each South Bay facility. <u>Exhibit A-1</u>, Relator's First Set of Interrogatories to Def. South Bay Mental Health Center, Inc. at 10-11; L.R. 26.1(c).  The interrogatory at issue:

### <u>INTERROGATORY NO. 2</u>

Identify each of Your unlicensed and licensed counselors, social workers, supervisors, clinical directors, and regional directors at each South Bay facility, including the following information:

a.    Their title, dates of employment, employment status (full or part time), dates holding each title, the specific South Bay facility at which they worked, whether they provided or supervised services provided to MassHealth members, or were otherwise associated, and the dates they provided or supervised services at each South Bay facility listed;

b.    The qualifications possessed by each identified person during their employment by or association with You, including post-secondary education history, degrees awarded (including the field in which the degree was awarded), licenses, board certifications and/or eligibility, work history, supervised clinical experience (including in an administrative capacity), internship experience, and the dates of

the foregoing;

c.    The specific dates during which each counselor, social worker, supervisor, clinical director, and regional director was licensed or unlicensed while employed by or affiliated with South Bay;

d.    The supervisor, if any, of each counselor, social worker, supervisor, and clinical director, including the specific dates during which the supervisor supervised the counselor, social worker, supervisor, and clinical director;

e.    The dates of each counselor, social worker, supervisor, and clinical director's first 90 days of employment or association with You ("90-day introductory period").

South Bay declined to answer this interrogatory and its subparts fully in writing. Instead, after interposing a paragraph of boilerplate objections, South Bay's answer stated only that it would produce "billing data, personnel files, and supervision notes," which "speak for themselves." Exhibit A-2 at 8, South Bay's Supplemental Resp. to Relator's First Set of Interrogatories. On November 7—more than three months after the documents were due pursuant to Local Rule 33.1(b)(4)—South Bay ultimately produced 7,222 pages supposedly responsive to Interrogatory No. 2, which South Bay described as "a licensed clinical supervision report and supervision audits and notes." Exhibit A-3, Letter from S. Beckley to C. Silhan (Nov. 7, 2018). On November 29—the very last day for document production pursuant to the Modified Discovery Schedule, ECF No. 178, and almost *four months* after the documents were due pursuant to Local Rule 33.1(b)(4)—South Bay produced ***173,530 pages*** of "supervision notes and personnel files" supposedly in response to Interrogatory No. 2. Exhibit A-4, Letter from S. Beckley to C. Silhan (Nov. 29, 2018). The documents produced and referenced in the supplemental response are not

sufficient for Relator to answer the interrogatory as it was posed, and therefore do not comply with Federal Rule of Civil Procedure 33(d).

## II.
## ARGUMENT

### A. An Answering Party May Only Produce Business Records in Lieu of a Sworn Written Interrogatory Answer If It Satisfies Four Criteria

Ordinarily, if information sought by an interrogatory is available in the answering party's files and records, that party is under a duty to search the records and provide the answers in writing and signed under oath. Fed. R. Civ. P. 33(b)(3), (5). Rule 33(d) provides an exception, allowing the answering party to produce business records from which the interrogating party may derive the answer to an interrogatory, but only "if the burden of deriving or ascertaining the answer will be substantially the same for either party." The answering party must "specify[] the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]" Fed. R. Civ. P. 33(d)(1); *see also* L.R. 33.1(b)(1) (same). Further, the answering party may not avoid answering interrogatories under oath "by making only a general reference to a mass of documents or records." *Hypertherm, Inc. v. Am. Torch Tip Co.*, No. CIV. 05-CV-373-JD, 2008 WL 5423833, at *3 (D.N.H. Dec. 29, 2008) (citing *Calkins v. Pacel Corp.,* 2008 WL 2311565, *4 (W.D. Va. June 4, 2008)); *see also* Fed. R. Civ. P. 33, Advisory Committee's note to 1970 Amendment (the answering party "may not impose on an interrogating party a mass of records as to which research is feasible only for one familiar with the records"); Fed. R. Civ. P. 33, Advisory Committee's note to 1980 Amendment ("the responding party has a duty to specify, by category and location, the records from which interrogatories can be derived").

To invoke Rule 33(d)'s option to produce business records, courts require the answering party satisfy four criteria:

**First**, the producing party must affirm that the information sought by the interrogatory is in fact available in the specified records. **Second**, the producing party must specify the actual documents where information will be found. **Third**, the producing party must show that answering the interrogatory in the traditional manner would impose a burden on it. **Finally**, the producing party must show that the burden of deriving the answer from the specified documents will be the substantially the same for both parties.

*FM Generator, Inc. v. MTU Onsite Energy Corp.,* No. CV 14-14354-DJC, 2016 WL 8902603, at *5 (D. Mass. Aug. 25, 2016) (emphasis added) (citations omitted); *see also Licensed 2 Thrill, LLC v. Rakuten, Inc.*, No. CV 13-11257-DJC, 2015 WL 13376540, at *3 (D. Mass. Oct. 13, 2015) (same). The burden is on the producing party to satisfy the criteria of Rule 33(d) instead of answering the interrogatories. *Riverfront Landing Phase II Owners' Ass'n for Assignee of Charles Gil Peckham & GT Framing v. Assurance Co. of Am*., No. C08-0656RSL, 2008 WL 11344626, at *1 (W.D. Wash. Dec. 16, 2008).

Because South Bay cannot satisfy these requirements, it should be ordered to answer the interrogatories pursuant to Rule 33(b)(3)—that is, in writing and under oath, either in narrative or table form. Most importantly, South Bay cannot affirm that the information sought by Interrogatory No. 2 is contained in the specified records, because the records simply do not provide sufficient information to completely answer each subpart of the interrogatory.

In *United States et al. ex rel. Escobar v. Universal Health Services, Inc. et al.*, the parties had a dispute over interrogatories like those at issue here, which requested that defendants provide information about the qualifications and licensure status of the clinicians they employed. *See* Exhibit A-5, Memorandum in Support of Relator's Motion to Compel, C.A. No. 11-CV-11170-DPW, ECF No. 216-1 (June 4, 2018). There, the *Escobar* relators requested, and the Court ordered, that defendants supply their answers in a table format, and certify that all documents responsive to the interrogatories were produced to the relators. *See* Exhibit A-6, Electronic Order, C.A. No. 11-

CV-11170-DPW, ECF No. 221 (June 27, 2018). Relator believes that a similar format would be appropriate here with respect to Relator's Interrogatory Nos. 2.[1]

### B. South Bay Has Failed to Affirm and Specify Which Documents Contain the Information Sought by the Interrogatories and the Subparts Thereto

As set out above, the answering party must both affirm that the information sought in the interrogatory is available in the records, and must specify the documents where the information can be found. If it cannot do so, it must completely answer the interrogatory without referring to the documents. *See, e.g., Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-2389 SJO (SS), 2016 WL 11266869, at *8 (C.D. Cal. Oct. 18, 2016) (ordering Plaintiffs to provide a narrative response to interrogatories where it was unable to identify specific documents sufficient to respond to the questions asked by the interrogatory) (collecting cases). In any case, a party may not simply refer to a production of documents and leave it to the interrogating party "to guess as to where the needle might be found in the haystack." *United States v. R.J. Zavoral & Sons, Inc.*, No. 12-CV-668 (MJD/LIB), 2014 WL 12756821, at *3 (D. Minn. Apr. 23, 2014); *see also Mulero-Abreu v. Puerto Rico Police Dep't,* 675 F.3d 88, 93 (1st Cir. 2012) ("answering interrogatories by simply directing the proponent to rummage through other discovery materials falls short of the obligations imposed by Rule 33"). That is, however, exactly what South Bay has done here.

Relator's Interrogatory No. 2 asks South Bay to identify its licensed and unlicensed personnel at each South Bay facility, and contains subparts requesting particularized information about their employment at South Bay; the qualifications they possessed while working there; the

---

[1] South Bay's counsel—who is also counsel for defendants in the *Escobar* matter—has indicated that it would be more burdensome for South Bay to answer Relator's interrogatories in table form in the instant case than it was for the *Escobar* defendants. As set out below, however, the burden test under Rule 33(d) is not whether it is more or less burdensome for different defendants to comply with their discovery obligations in their respective cases. Instead, South Bay must show that the burden of deriving its answer to Relator's interrogatories from the documents "will be substantially the same" for the relevant parties *in this case*, that is, South Bay and Relator Martino-Fleming. Fed. R. Civ. P. 33(d).

dates during which they were licensed or unlicensed; their supervisors, if any; and the dates of their first 90 days of employment. *See* <u>Exhibit A-1</u> at 10-11. Although South Bay stated that it would "produce the business records in sufficient detail to enable the Relator to locate and identify them in compliance with Fed. R. Civ. P. 33(d) and L.R. 33.1(b)," <u>Exhibit A-7</u>, South Bay has not sufficiently specified what documents can answer which questions or subparts. *See Hillyard Enterprises, Inc. v. Warren Oil Co.*, No. 5:02-CV-329, 2003 WL 25904133, at *2 (E.D.N.C. Jan. 31, 2003). Instead, South Bay has produced ***more than 180,000 pages of documents,*** and has simply described a large subset of them as being responsive to Interrogatory No. 2. These consist of "a licensed clinical supervision report, [] supervision audits and notes," and "supervision notes and personnel files." <u>Exhibit A-2 at 8</u>. In its supplement, South Bay purports to identify which of the documents contain the specific information sought by the interrogatory, but it ignores the subparts of the interrogatory. It appears that South Bay is leaving it to Relator to search through the documents identified in its Supplemental Responses and Exhibit A to its Supplemental Responses to somehow piece together South Bay's answers to her interrogatories, precisely the outcome that Rule 33(d)(1) and L.R. 33.1(b)(1) protect against.

Based on Relator's review to-date, the records produced in response to Interrogatory No. 2 are documents, by individual therapists, consisting of either a single supervision or session note or a handful of other documents involving that therapist. The supervision notes have dates on them and most list the therapist's supervisor, though many do so without including a full name, instead using initials or only a first or last name. Many of the 180,000 pages of records are handwritten and barely decipherable to Relator, making it virtually impossible for her to identify which documents contain information responsive to Interrogatory No. 2 and its subparts.

For example, <u>Confidential Exhibit A-8</u> is a Clinical Supervision note dated June 3rd or 13th, 2011. It purports to be a supervision note by someone, perhaps named Kristin, supervising someone named Kristina. South Bay has had many similar-named employees throughout the relevant time-period, and on the face of the document Relator would be left to guess to which Kristina and Kristin this particular note pertains. The document itself does not have the individuals' titles, dates of employment, or employment status; it does not identify the facility at which they worked; it does not provide information as to whether the note pertains to a MassHealth member; and it does indicate whether the clinician, Kristina, even saw MassHealth members. The document also does not indicate the qualifications of either individual, their education, their degrees, their licenses or board certifications, their internship experience, or the relevant dates of any of that information.  And the hand-written forms do not indicate if the clinician was seeing patients during his or her 90-day introductory period. The only information that can be derived from the forms are barely legible first names, a completely illegible signature, and some kind of date.

It would appear from South Bay's supplemental responses that South Bay intends Relator to cross-check the hand-written notes with two spreadsheets identified as SB00153160 and SB00153159.[2] This task is, however, impossible. To begin with, South Bay states in its supplemental response that "fields marked with an asterisk… reflect current information.  The system does not store historical information for those fields and populates with current information." <u>Exhibit A-2 at 9</u>. South Bay seems to suggest that ascertaining the historical licensure of an individual is impossible because "the system does not store historical information" and so the licensure information provided is current as of the date the spreadsheet was generated from the system.  If South Bay is stating that this information no longer exists anywhere in its own

---

[2] Excerpts of these spreadsheets are provided as <u>Confidential Exhibit A-9</u> and <u>Confidential Exhibit A-10</u>.

records, it should state so plainly and without ambiguity. Instead, Relator is left guessing whether that information is kept somewhere else in the "system," what that "system" is, what backup data may be available, where the information came from that was originally entered into the system, and why the underlying Credible electronic system has not been produced if that is where the information is contained.

Secondly, the referenced spreadsheets, SB00153160 and SB00153159, start in November of 2015. South Bay does not appear to have provided such spreadsheets, which purportedly identify clinician and supervisor licensure by claim, for any claims prior to November of 2015. Relator cannot use these purported guides to assess the Clinical Supervision Note dated, for example, June 3rd or 13th, 2011, Confidential Exhibit A-7. To the extent the spreadsheets arguably provide some of the information requested, the spreadsheets simply do not provide all of the information requested and do not comply with Rule 33(d), even when cross-referenced with the voluminous hand-written notes.

In similar circumstances, this Court has held that referring a requesting party to an entire set of responsive material is insufficient under Rule 33(d). In *FM Generator Inc. v. MTU Onsite Energy Corp.*, the defendant answered an interrogatory by producing an entire database consisting of 2,700 entries of electronically-stored information. 2016 WL 8902603 at * 6. This Court held that doing so did "not meet the specificity requirement of Rule 33(d)," and further noted that the responses failed to "establish that all information sought is in fact available in the documents referenced[.]" *Id.*; *see also In re Ethicon, Inc. Pelvic Repair Sys Prod. Liab. Litig,* No. MDL-2327, 2013 WL 8744561, at *2 (S.D.W Va. July 26, 2013) (collecting cases). The Court ordered the defendant to supplement its responses by providing the specific information requested in the interrogatory and "pointing out the documents from which the answer may be discovered." *FM*

*Generator,* 2016 WL 8902603 at * 6.

Similarly, in *Licensed 2 Thrill, LLC v. Rakuten, Inc.*, the defendant answered an interrogatory by "specifying bates numbers for documents that would presumably lead to the information requested" by the plaintiff. 2015 WL 13376540, at *2. This Court held that in doing so, the defendant had failed to affirm that the information sought by the interrogatory was in fact available in the specified records, and ordered the defendant to answer the interrogatories. *Id.* at *3.

So too here. With respect to Interrogatory No. 2, instead of affirming and identifying the documents where the specific information Relator requests can be found, South Bay dumped 180,000 pages of records that it claims "speak for themselves." Exhibit A-2 at 8. Under Rule 33(d), however, it is not up to the Relator to comb through voluminous business records to reveal South Bay's answers to her interrogatories. Instead, it is South Bay's duty to identify the particular documents that contain the specific information requested in Relator's interrogatories. While South Bay's purported supplemental response does direct Relator to some specific documents, Relator cannot answer the interrogatory posed with the documents provided.

## C. There Is No Burden to South Bay in Answering Relator's Interrogatories in the Traditional Manner

In order to invoke Rule 33(d)'s option to produce business records, South Bay must show that answering the interrogatory in the traditional manner would impose a burden on it. *FM Generator, Inc.,* 2016 WL 8902603, at *5. Here, however, aside from making boilerplate objections that each and every one of Relator's interrogatories are "unduly burdensome," Exhibit A-2, South Bay has failed to describe any burden associated with answering Relator's interrogatories. Indeed, responding to Interrogatory Nos. 2 should not be burdensome on South Bay, since it is required to keep and maintain the information requested in the interrogatory in

order to bill for mental health services provided to MassHealth members in the first place. Further, South Bay has presumably already culled its files for the requested information in answering the Plaintiffs' Amended Consolidated Complaint, and so it should be able to provide the information to Relator in response to her interrogatory. *See, e.g., Hillyard Enterprises, Inc. v. Warren Oil Co.*, No. 5:02-CV-329, 2003 WL 25904133, at *3 (E.D.N.C. Jan. 31, 2003). If South Bay has lost this information because "the system" no longer contains what is called for by the interrogatory requests, South Bay should unequivocally so state in its response.

### D. South Bay Has Failed to Show that the Burden of Deriving the Interrogatory Answers from the Hundreds of Thousands of Pages of Documents It Produced is Substantially the Same for Both Parties

Even if South Bay could establish that responding to Relator's interrogatories is burdensome, and even if it had properly affirmed and specified the documents that contain information responsive to Relator's interrogatories, its response would still be deficient. South Bay must also satisfy a threshold requirement of Rule 33(d): a showing that the burden of deriving the answer to the interrogatory from the documents is "substantially the same" for both parties. Where, as here, a defendant responds to interrogatories about its own personnel and business practices by producing business records pursuant to Rule 33(d), courts consider the defendants' advantage and familiarity with its own records in assessing the parties' relative burdens. *See, e.g., Riverfront Landing*, 2008 WL 11344626, at *2 (noting that the defendant could more easily ascertain which of its own employees was involved in a claim); *Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 556 (D. Mass. 1986) (holding that where a defendant produced a mass of documents without directing the interrogating party to the specific documents where answers can be found, "the interrogated party's familiarity with its own records can fairly be taken into account in assessing relative burdens.").

13

In *Riverfront Landing Phase II Owners' Association for Assignee of Charles Gil Peckham & GT Framing v. Assurance Co. of America*, for instance, in lieu of providing a written response, defendant insurer answered an interrogatory seeking the identity of persons with knowledge of an insurance claim by directing plaintiff to its 700-page insurance claim file. 2008 WL 11344626, at *2. The court rejected the defendant's contention that the burden of deriving the interrogatory answer was substantially the same for both parties, instead finding that "[i]t would certainly be difficult for plaintiff to comb through 700 pages to determine which ACA employees had knowledge of the relevant claim," while the defendant was "in a much better position to identify who amongst its own employees was involved[.]" *Id.* While the plaintiff "would have to hunt through each page of the document to find each incidental name and then somehow determine each person's role in the company and the claim," the defendant at least knew who of its employees worked on the claim. *Id.* "Even if defendant would have to supplement its knowledge by reading through the 700-page document, defendant has not offered any justification for shifting that burden onto the plaintiff." *Id.* The court ordered defendant to provide a written response to the interrogatory.

On similar facts, this Court has held that where the defendant's only specification of records in response to an interrogatory was a 154,000-page New Drug Application file, "[i]t is simply absurd to contend that it is equally burdensome for the plaintiff to derive this information" from the documents. *Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 556 (D. Mass. 1986). The Court noted that because defendant's employees generated and maintained the documents, "[t]hey are clearly better able to extract the information which is needed to answer the interrogatories than is the plaintiff[.]" *Id.* Accordingly, the Court ordered the defendant to answer the interrogatories without resort to Rule 33(d). *Id.* at 557.

Here, the burden of deriving the answer to Relator's Interrogatory No. 2 is much greater for Relator than for South Bay, as <u>Confidential Exhibit A-8</u> plainly demonstrates. While Relator has admittedly not yet been able to complete her review of each and every one of the newly produced documents, she has been able to review enough of the production to state that the handwritten notes, often difficult to read, do not themselves alone contain the information requested by Interrogatory No. 2. This is sufficient to support a finding that the burdens are not substantially the same. *See Al Barnett & Son, Inc. v. Outboard Marine Corp.,* 611 F.2d 32, 35 (1st Cir. 1979). Unlike Relator, South Bay has access to employees who are familiar with these records, how they were maintained, and the hand-writing of the individuals who were involved in making the notations. Relator therefore respectfully requests that this Court order South Bay to provide a substantive response to Interrogatory No. 2 within two weeks.

### E.  The Parties' Meet-and-Confer Efforts

Counsel for Relator and South Bay have met and conferred several times in an effort to narrow or resolve the areas of disagreement with respect to South Bay's interrogatory responses. *See e.g.,* <u>Exhibit A-11</u>, Letter from C. Silhan to S. Beckley (Aug. 2, 2018); <u>Exhibit A-7</u>, Letter from S. Beckley to C. Silhan (Aug. 20. 2018); <u>Exhibit A-12</u>, Letter from S. Blackburn to L. McLane (February 5, 2019).

Pursuant to LR 37.1(b), Relator most recently discussed these deficiencies with South Bay's counsel on February 1, 2019 at 2:00 p.m. and expressed the concerns expressed in this motion. Those present during the telephonic meet and confer session were S. Blackburn, A. Fitzgerald, and T. Ourso on behalf of Relator, with L. McLane and S. Beckley representing Defendant South Bay. During that discussion, South Bay affirmed that they were not withholding any information on the objection that any of the subparts of the interrogatories were not rationally

15

related to the main interrogatory. South Bay further affirmed that the Credible software system over-writes each individual clinician's licensure status as of the date the new information is updated in the credible system. However, with respect to whether the documents provided are sufficient for Relator to answer Interrogatory No. 2 and its subparts, the parties were unable to reach a resolution, and so the dispute is presented to the Court for determination.

## III.
## CONCLUSION

WHEREFORE, Relator prays this Court enter an Order compelling South Bay to provide supplemental responses to Relator's Interrogatory No. 2, within two weeks of the date of the Order.

Dated: February 14, 2019                          Respectfully submitted,

**HAMILTON WINGO, LLP**

By: */s/ Christopher S. Hamilton*
Christopher S. Hamilton (*pro hac vice*)
Texas State Bar No. 24046013
Stephen T. Blackburn (*pro hac vice*)
Texas State Bar No. 24043555
California State Bar No. 232887
Andrea L. Fitzgerald (*pro hac vice*)
Texas State Bar No. 24081982
325 North St. Paul Street, Suite 3300
Dallas, Texas 75201
214-234-7900 (Telephone)
214-234-7300 (Facsimile)
chamilton@hamiltonwingo.com
sblackburn@hamiltonwingo.com
afitzgerald@hamiltonwingo.com

**WATERS & KRAUS, LLP**
Charles Siegel (*pro hac vice*)
Texas State Bar No. 18341875
Pennsylvania State Bar No. 310882
Caitlyn E. Silhan (*pro hac vice*)

Texas State Bar No. 24072879
California State Bar No. 303177
Taryn Ourso (*pro hac vice*)
Texas State Bar No. 24107315
3141 Hood Street, Suite 700
Dallas, Texas 75219
214-357-6244 (Telephone)
214-357-7252 (Facsimile)
siegel@waterskraus.com
csilhan@waterskraus.com
tourso@waterskraus.com

**JEFFREY NEWMAN LAW**
Jeffrey A. Newman
Massachusetts BBO # 370450
One Story Terrace
Marblehead, MA 01945
(617) 823-3217 (Telephone)
(781) 639-8688 (Facsimile)
jeffrey.newman1@gmail.com

***ATTORNEYS FOR PLAINTIFF-RELATOR***

## CERTIFICATE OF SERVICE

I, Stephen T. Blackburn, hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 14, 2019.

By: /s/ *Stephen T. Blackburn*_____