# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. CHRISTINE MARTINO-FLEMING, Relator, | ) ) ) |  |
| and | ) ) |  |
| COMMONWEALTH OF MASSACHUSETTS, ex rel. CHRISTINE MARTINO-FLEMING, Relator, | ) ) ) ) | Civil Action No. 15-CV-13065-PBS |
| v. | ) ) | *Oral Argument Requested* |
| SOUTH BAY MENTAL HEALTH CENTER, INC.; COMMUNITY INTERVENTION SERVICES, INC.; H.I.G. GROWTH PARTNERS, LLC; H.I.G. CAPITAL, LLC; PETER J. SCANLON; AND KEVIN P. SHEEHAN. | ) ) ) ) ) ) |  |

_____

## OPPOSITION TO RELATOR'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES BY SOUTH BAY MENTAL HEALTH CENTER, INC.

Mark W. Pearlstein (BBO # 542064)
Laura McLane (BBO # 644573)
Shamis N. Beckley (BBO # 697425)
MCDERMOTT WILL & EMERY LLP
28 State Street
Boston, MA  02109-1775
mpearlstein@mwe.com
lmclane@mwe.com
sbeckley@mwe.com
Telephone: (617) 535-4000
Facsimile: (617) 535-3800

February 28, 2019

*Counsel for South Bay Mental Health Center, Inc.; Community Intervention Services, Inc.; Community Intervention Services Holdings, Inc.; H.I.G. Growth Partners, LLC; and H.I.G. Capital, LLC*

## I.    INTRODUCTION

Relator Christine Martino-Fleming ("Relator") decided that South Bay Mental Health Center, Inc. ("South Bay")'s reliance on Fed. R. Civ. P. 33(d) ("Rule 33(d)") in response to a sweeping and wildly burdensome interrogatory was deficient prior to reviewing the documents produced by South Bay that contain the information responsive to the interrogatory.  Indeed, it is evident that, even to date, Relator's counsel has not fully reviewed the documents.  If they had, it would be obvious that their claims that information is missing or inadequate to respond to the interrogatory are wrong.  To be clear, the documents in question are documents that Relator required South Bay to produce, after rejecting South Bay's requests to narrow Relator's broad document requests.  Relator now comes before this Court complaining that she has too many documents to review, and seeks an order that South Bay summarize the documents for her.  The Court should reject this invitation.

The parties are in the beginning stages of fact depositions, and have a mediation scheduled for April 2, 2019.  What Relator is now asking, in the midst of all of this activity, is an order from this Court that would require South Bay to answer an interrogatory by creating an extensive summary of the documents it has produced, so that Relator does not have to review them.  Relator seems to suggest that South Bay has unlimited resources to spend on discovery, but as this Court and Relator well know, that is simply not the case.  South Bay estimates that preparation of the summary that Relator requests could consume approximately 700 attorney and paralegal hours for even a single facility—this case involves *18 facilities*—and would likely necessitate an extension on the existing deadlines in this case.

But the more fundamental point is this: even if South Bay had unlimited resources, and even if case deadlines would not be impacted, Relator's motion should be denied because South Bay properly invoked Rule 33(d) in response to the interrogatory in question, by providing

documents from which the answer may be derived and "specifying the records that must be reviewed, in sufficient detail to enable [Relator] to locate and identify them . . . ." Fed. R. Civ. P. 33(d)(1). The information that Relator seeks is in the documents Relator requested, and South Bay informed Relator of where in the document production the information can be found. The burden of ascertaining the answer is substantially the same for either party. There is simply no basis for the relief that Relator seeks here.

The illusory manner in which Relator purportedly undertook to "meet and confer" about the subject matter of the Motion to Compel belies the baseless nature of that Motion. During a recent telephone conversation between South Bay's counsel and Relator's counsel, South Bay agreed to once again direct Relator to the places in the document production where responsive documents could be located (which South Bay had already done multiple times previously, but which Relator apparently ignored), and to look into whether additional information could be provided to Relator; while South Bay had already complied with Rule 33(d), it offered to do this in order to resolve the parties' discovery dispute. In correspondence subsequent to the call, South Bay promised to provide this information to Relator by February 15, 2019, a timeline to which Relator agreed. In the meantime, South Bay's counsel, in the spirit of seeking to reach a compromise, worked with their client to gather additional information in an effort to satisfy Relator. It was therefore a surprise that, rather than waiting to receive this information, Relator jumped the gun and filed a Motion to Compel on February 14, 2019. *See* ECF No. 207 ("Mem."). Not only is this contrary to the meet and confer requirements of this Court's local rules, but it underscores what, in retrospect, was already plain: Relator never intended to obtain the information she seeks from the documents South Bay produced. Indeed, Relator always intended to drag the Court into this discovery dispute, with the goal to have the Court order South Bay to effectively

do the job of Relator's counsel for them by summarizing its own document production. But it is Relator's burden to build her case from the evidence South Bay has produced at Relator's insistence, not the other way around. The Motion to Compel should be denied.

## II.    BACKGROUND

### A.  <u>South Bay and Relator's Allegations</u>

South Bay is a behavioral health provider based in Brockton, Massachusetts that provides mental health services to low-income residents of the Commonwealth. Amended Consolidated Complaint ("ACC") ¶¶ 12, 19, 20, ECF No. 201. Many of South Bay's patients are MassHealth (Medicaid) members. ACC ¶ 80. In the ACC, the Plaintiffs allege that South Bay submitted false claims to MassHealth and various managed care entities from "August 2009 to the present" because it was allegedly not in compliance with staffing and supervision regulations. ACC ¶¶ 1, 112.

### B.  <u>Relator's Interrogatories and the Interrogatory at Issue</u>

Relator propounded her First Set of Interrogatories on South Bay on June 19, 2018. *See* **Ex. A-1**, Relator's First Set of Interrogs. to Def. South Bay Mental Health Center, Inc. Interrogatory No. 2 sought detailed information relating to *every single* unlicensed[1] and licensed counselor, social worker, supervisor, clinical director, and regional director at *all eighteen* South Bay facilities for a period of *over nine years*, from January 1, 2009 to present. **Ex. A-1** at 5, 10–11. In particular, Interrogatory No. 2 included five subparts calling for the following exhaustive information for each South Bay employee:

> a. Their title, dates of employment, employment status (full or part time), dates holding each title, the specific South Bay facility at which they worked, whether they provided or supervised services provided to MassHealth members, or

---

[1] Under MassHealth regulations, unlicensed counselors can provided mental health services to MassHealth members under the supervision of other licensed professionals. *See* 130 C.M.R. § 429.424.

were otherwise associated, and the dates they provided or supervised services at each South Bay facility listed;

b. The qualifications possessed by each identified person during their employment by or association with You, including post-secondary education history, degrees awarded (including the field in which the degree was awarded), licenses, board certifications and/or eligibility, work history, supervised clinical experience (including in an administrative capacity), internship experience, and the dates of the foregoing;

c. The specific dates during which each counselor, social worker, supervisor, clinical director, and regional director was licensed or unlicensed while employed by or affiliated with South Bay;

d. The supervisor, if any, of each counselor, social worker, supervisor, and clinical director, including the specific dates during which the supervisor supervised the counselor, social worker, supervisor, and clinical director;

e. The dates of each counselor, social worker, supervisor, and clinical director's first 90 days of employment or association with You ("90-day introductory period").

*See* **Ex. A-1** at 10–11.

South Bay timely responded to Relator's First Set of Interrogatories on July 19, 2018, by providing substantive responses and indicating that it would also produce responsive documents pursuant to Rule 33(d) and L.R. 33.1(b).  *See* **Ex. A-2**, South Bay's Resps. to Relator's First Set of Interrogs.  South Bay properly invoked Rule 33(d) in response to Interrogatory 2 because the burden of deriving the information from the available responsive records is "substantially the same" for South Bay as it is for Relator.  Fed. R. Civ. P. 33(d).  Further, given the breadth of Relator's interrogatories, particularly Interrogatory No. 2, it would have been exceedingly burdensome if South Bay, a mental health services provider to low-income residents with limited resources, were not entitled to invoke Rule 33(d).  Indeed, Rule 33(d) was created to address the very concerns presented by Relator's sweeping Interrogatory, providing the responding party with "***an option to make the records available and place the burden of research on the party who seeks the information***" to prevent the responding party from engaging "***in burdensome or***

4

*expensive research into his own business records in order to give an answer*."  *See* Fed. R. Civ. P. 33(d) advisory committee's note to 1970 amendment to Fed. R. Civ. P. 33(c) (renumbered Rule 33(d) in 1993) (emphasis added).  Accordingly, South Bay properly relied on the rule.

### C.  Relator's Document Requests

In addition to propounding interrogatories, Relator served broad document requests on South Bay.  *See* **Ex. A-3**, Relator's Reqs. for Production of Documents to South Bay Mental Health Center, Inc.  Relator's 94 individual document requests to South Bay included requests for all documents relied on to answer Relator's interrogatories and a number of requests covering all of South Bay's supervision documentation, including "all supervision folders referenced in [South Bay's] responses to Relator's interrogatories, as well as all supervision logs."  *See* **Ex. A-3**, Reqs. 1, 46-47, 51, 63-66, 72.  Relator also sought, among other items, all documents "concerning waiver requests," "personnel lists," and a variety of other documents relating to South Bay's clinicians at eighteen facilities for nearly a decade.  *See* **Ex. A-3**, Reqs. 19, 53, 70-74.  The parties agreed that South Bay would begin producing documents responsive to Relator's interrogatories and document requests on a rolling basis during the week of August 20, 2018.  *See* **Ex. A**, Sworn Declaration of Shamis Beckley ("Beckley Decl.") ¶ 5.  South Bay did so.

### D.  Relator Demands Production of Hardcopy and Handwritten Documents

While South Bay prepared to produce documents on the parties' agreed timeline, South Bay's counsel had further discussions with Relator's counsel about the scope of the documents to be produced.  Among other things, the discussions concerned how to handle hardcopy documentation pre-dating 2015.  *See* **Ex. A**, Beckley Decl. ¶ 7.  In South Bay's initial responses to Relator's First Set of Interrogatories, South Bay explained that prior to 2015 when South Bay implemented its current electronic health records system, "Credible," South Bay clinicians

completed progress notes manually. *See* **Ex. A-2** at 4–5. Before implementing Credible, claims were processed through the "AR Plus" system, and the hardcopy records were filed. *See id.*

During an August 3, 2018 discussion with Relator's counsel, South Bay's counsel explained that South Bay's supervision documentation pre-dating 2015 was located in these handwritten, hardcopy records. *See* **Ex. A**, Beckley Decl. ¶ 7. South Bay's counsel explained the nature of these documents and noted that a sample set of the handwritten records were produced to the government during the CID investigative period, which Relator had in her possession, and provided Relator's counsel with the Bates ranges for these records. *See* **Ex. A**, Beckley Decl. ¶ 7; **Ex. A-7**, Aug. 3, 2018 email chain between S. Beckley and C. Silhan. South Bay's counsel emphasized that producing all of the pre-2015 supervision records would be burdensome, time-consuming, and expensive, as it would require South Bay to collect, scan, and process thousands of hardcopy documents for production. *See* **Ex. A-8**, Aug. 20, 2018 email from S. Beckley to C. Silhan, attaching letter to C. Silhan.

On September 7, 2018, counsel for South Bay and Relator conferred on South Bay's production of these hardcopy supervision records. *See* **Ex. A-9**, Sept. 7, 2018 email chain between S. Beckley and C. Silhan. Relator's counsel reiterated that South Bay should produce all of its hardcopy supervision records.[2] **Ex. A**, Beckley Decl. ¶ 9. Notably, during these discussions, Relator did not raise any concerns regarding her ability to decipher the information in the hard copy records, ***despite having received nearly 7,000 hardcopy records*** that were produced during the CID investigation period. *Id.*

---

[2] Relator's offered compromise was to provide South Bay with a prioritized list of facilities to help South Bay sequence its collection. *See* **Ex. A-9**.

**E.  South Bay Spends Substantial Time and Money Producing Documents Demanded by Relator, and Properly Identifies Documents Containing the Requested Information for Relator**

South Bay proceeded to respond efficiently and diligently to Relator's voluminous discovery requests, including the requests for supervision records discussed above.  Over the next few months South Bay collected and reviewed hundreds of thousands of documents, including thousands of hardcopy records collected from the individual facilities at issue. **Ex. A**, Beckley Decl. ¶ 10.  South Bay and the other corporate defendants worked diligently to respond to Relator's **210 individual document requests**, including the 94 document requests propounded to South Bay alone.  *Id.  See also* **Exs. A-3**; **A-4**, Relator's Reqs. for Production of Documents to H.I.G. Growth Partners, LLC and H.I.G. Capital, LLC; **A-5**, Relator's Reqs. for Production of Documents to Community Intervention Services, Inc.

In all, the corporate defendants collected and reviewed hundreds of thousands of documents, and produced nearly 120,000 documents to Relator, including over 20,000 hardcopy supervision records demanded by Relator.  As part of this effort, South Bay had to engage an outside vendor to scan those hardcopy records at considerable expense so that they could be reviewed and produced.  **Ex. A**, Beckley Decl. ¶¶ 10–11.

South Bay made rolling document productions to Relator on October 12, 2018, November 7, 2018, and November 29, 2018.  *See* **Exs. A-10** (Oct. 12, 2018 letter from S. Beckley to C. Silhan), **A-11** (Nov. 7, 2018 letter from S. Beckley to C. Silhan), **Ex. A-12** (November 29, 2018 letter from S. Beckley to C. Silhan).  In each production letter, South Bay identified documents responsive to Relator's various interrogatories pursuant to Rule 33(d) and L.R. 33.1(b).  *See, e.g.*, **Ex. A-11** at 1.  These letters—augmented by South Bay's December 28, 2018 Supplemental Responses to Relator's First Set of Interrogatories (**Ex. A-15**)—directed Relator to documents from which Relator could ascertain the answers to Interrogatory No. 2.  *See* **Exs. A-11** at 1–2; **A-**

**12** at 1. All told, South Bay identified the Bates numbers for licensed clinical supervision reports, supervision audits and notes, billing records, personnel files, employee rosters, (**Ex. A-15** at 8–9), waiver tracking data (*id.* at 11), and the AR Plus and Credible spreadsheets, (*id.* at 9, 22), among other documents. The documents South Bay produced and identified contain the names of staff members, their titles and credentials including education level, the names of their supervisors and licensed supervisor (if different), dates of licensure, dates of hire and termination, the South Bay facility where they worked, home addresses, licensure information, date of service, and the amount billed to MassHealth—in other words, the information called for by Relator under Interrogatory No. 2.

Relator's complaints in her motion demonstrate that she has not actually taken the time to review the documents South Bay highlighted in response to her interrogatories. For example, Relator contends that South Bay did "not appear to have provided" spreadsheets for claims submitted between 2009-2015, and focuses only on two spreadsheets, SB00153160 and SB00153159, which constitute records pulled from South Bay's Credible system. Mem. at 11. Relator is incorrect. On November 7, 2018 South Bay in fact produced the AR Plus spreadsheets predating 2015 and provided Relator with the Bates numbers in its production letter.[3] *See* **Ex. A-11** at 3. These spreadsheets contain data from which Relator can clearly ascertain certain answers to Interrogatory No. 2, including the clinician's name, education level, date of service, and the amount billed to MassHealth. *See also* **Ex. A-15** at 9 (highlighting SB00154598-154604 in response to Interrogatory No. 2). Relator's persistent mischaracterization of South Bay's document production underscores that Relator simply will not deign to take the time to review the documents it demanded that South Bay produce.

---

[3] It has come to South Bay's attention that the 2013 AR Plus file (only) was inadvertently not produced to Relator. South Bay is working expeditiously to produce the 2013 AR Plus file to Relator.

### F.  **Relator Complains About South Bay's Production Before Completing its Review, and South Bay Provides Even More Information**

On December 21, 2018, 22 days after document discovery closed, Relator sent a letter to South Bay's counsel asserting that "[n]ow that Relator has received and ***started to review*** the more than 180,000 pages of documents produced in response to Relator's Interrogatories to South Bay . . . she has noted additional deficiencies."  *See* **Ex. A-13**, Dec. 21, 2018 letter from C. Silhan to S. Beckley, at 1 (emphasis added).  Notably, even before receiving, much less reviewing, *any* documents, Relator's counsel made noise in the summer of 2018 signaling their intention to challenge reliance by South Bay on Rule 33(d).  *See* **Ex. A-6**, Aug. 2, 2018 letter from C. Silhan to S. Beckley, at 1.  With respect to Interrogatory No. 2, Relator's primary complaints in her December 21, 2018 letter were that South Bay purportedly had not sufficiently identified responsive documents and that South Bay's handwritten supervision notes were "virtually impossible for Relator to decipher" and "where decipherable, contain incomplete information, listing clinicians and/or supervisors by first or last name only, for instance, or not at all."  **Ex. A-13** at 2.  Relator's blunt assertion that South Bay's answers were deficient was confusing given her simultaneous admission that she had only just started to review the production.  Moreover, Relator, while in the possession of nearly 7,000 of these hardcopy documents, had previously demanded that these supposedly indecipherable or incomplete documents be collected, scanned and produced.

On December 28, 2018, South Bay responded, noting that it had "identified by bates-number the records through which the answer to Relator's interrogatories may be derived, providing [her] with bates-numbers from [South Bay's] recent production, as well as from the investigation period."  *See* **Ex. A-14**, Dec. 28, 2018 letter from S. Beckley to C. Silhan, at 2.  This provided Relator "sufficient detail to enable [her] to locate and identify [responsive records] as

readily as [the corporate defendants] could." Fed. R. Civ. P. 33(d)(1); **Ex. A-14** at 2.  Nevertheless, South Bay indicated that it would be "happy to discuss a solution to avoid motion practice on this issue, which we see as an unnecessary expenditure of resources particularly given the upcoming mediation of this matter." *See* **Ex. A-14** at 2.

That same day, South Bay provided supplementary responses to Relator's First Set of Interrogatories.  *See* **Ex. A-15**.  These supplementary responses included additional substantive answers and once again identified for Relator documents responsive to her interrogatories pursuant to Rule 33(d) and L.R. 33.l(b).  South Bay's interrogatory responses detailed that, as previously discussed, prior to 2015 when South Bay implemented its electronic health records system, Credible, South Bay clinicians completed progress notes manually.  *Id.* at 4.  These notes were submitted to billing staff and processed through South Bay's AR Plus billing system, while the hardcopy records, including supervision records, were filed away.  *Id*. at 4.  After South Bay transferred to the Credible system, these records were processed electronically.  *Id*. at 4.  South Bay's supplemental responses highlighted for Relator by Bates number the previously produced Credible and AR Plus claims spreadsheets, as well as all hardcopy supervision records.  *See id.* at 8–9, 22.  This included the AR Plus spreadsheets predating 2015 that Relator now argues South Bay did "not appear to have provided."  Mem. at 11.

### G.  Relator's Illusory and Aborted "Meet and Confer"

On January 23, 2019, Relator's counsel requested a call to discuss South Bay's supplemental interrogatory answers.  *See* **Ex. A-16**, Jan. 23, 2019 email from S. Blackburn to L. McLane.  In particular, Relator represented that she was "seeking a greater understanding of the Credible electronic system," including its storage of historical information.  Accordingly, on February 1, 2019, counsel for both parties had a telephone call to address Relator's concerns.  *See* **Ex. A**, Beckley Decl. ¶ 17.

During the call, Relator's counsel represented that they had reviewed the Credible spreadsheets produced and highlighted by South Bay. **Ex. A**, Beckley Decl. ¶ 17. However, Relator's counsel then made the troubling assertion that South Bay had not produced spreadsheets for claims prior to 2015. *See* **Ex. A**, Beckley Decl. ¶ 17; *see also* **Ex. A-16** (seeking additional information on why the Credible spreadsheets "are date-limited"). Given South Bay's repeated disclosures concerning its transfer to the Credible system in 2015 and its provision of Bates numbers associated with the spreadsheets from the prior database, AR Plus, and prior explanations of these facts to Relators, it was strange that Relator continued to claim not to be aware of the AR Plus database or spreadsheets. Nevertheless, during the February 1, 2019 met and confer, counsel for South Bay once again informed Relator's counsel that it had produced the AR Plus spreadsheets covering the 2009-2015 date range. **Ex. A**, Beckley Decl. ¶ 17. Despite having highlighted these documents on multiple occasions, counsel for South Bay promised to once again provide the Bates numbers for these spreadsheets. *Id.*

In addition, counsel for Relator claimed during the call that they were confused by South Bay's prior disclosure (*see, e.g.*, **Ex. A-11** at 2) that certain fields in the Credible spreadsheets were only populated with current information. **Ex. A**, Beckley Decl. ¶ 18. Counsel for South Bay confirmed that the Credible system does not maintain historical information for certain billing fields, including the credential and supervisor fields, because those fields are not required by the payors. *Id.* Instead, the Credible system pulls that information from the underlying employee record which is updated regularly. *Id.* In addition, South Bay reminded Relator's counsel that all licensure information—one of the purportedly missing fields—is public record.[4] *Id.* However, in

---

[4] Licensure information is available online at, *Check a Commonwealth Licensee*, https://elicensing.mass.gov /CitizenAccess/GeneralProperty/PropertyLookUp.aspx?isLicensee=Y&_ga=2.142962482.606934396.1551133895- 724222603.1549048698 (last visited Feb. 28, 2019).

an effort to reach a compromise, counsel for South Bay agreed to work with their client to determine if there is any possible way to restore the historical information for those billing fields. *Id.*

On February 5, 2019, Relator's counsel sent a letter following up on the February 1, 2019 call, reiterating Relator's contention that South Bay's supplemental responses to Interrogatory No. 2 were purportedly deficient because the information called for "is not fully or fairly contained within the documents provided."  *See* **Ex. A-17** (Feb. 5, 2019 letter from S. Blackburn to L. McLane and S. Beckley).  Relator's counsel requested that South Bay provide or direct it to the information necessary to answer Interrogatory No. 2 by close of business on February 12, 2019. *See id.* at 3.  That same day, South Bay's counsel responded by email and explained that they were working with South Bay to collect additional information that might resolve the discovery dispute, but due to travel schedules the February 12, 2019 deadline imposed by Relator's counsel may not feasible, and that South Bay would provide a supplemental response by February 15, 2019 – just three days after Relator's requested response date.  *See* **Ex. A-18,** Feb. 5, 2019 email from L. McLane to S. Blackburn, at 1.  Relator's counsel responded "[t]hank you."  *Id.*  South Bay's counsel proceeded to work with their client to provide a timely response, engaging South Bay's IT staff in a review and analysis of the Credible system to determine whether there was a way to access and rebuild the otherwise unavailable historical information from that system.  **Ex. A**, Beckley Decl. ¶ 21.[5]

---

[5] Further to its February 1, 2018 meet and confer, on February 28, 2019, South Bay produced a spreadsheet showing changes made to the supervisor and licensed supervisor field reflected in the Credible claim spreadsheet, including the date the change was made, the employee who input the change, and the old and new value.  As a result of our review, South Bay's information technology team has also been able to pull additional Credible supervision records as well.  Those records, which provide additional detail on clinician supervision, are currently being processed and will be produced shortly.

Rather than waiting for South Bay's February 15, 2019 response as agreed, on February 14, 2019, Relator filed the instant Motion to Compel. *See* ECF No. 207. Relator attached three documents to her motion to compel that are designated as Highly Confidential-PHI pursuant to the protective order in this case. *See* ECF No. 207-10, 207-11, 207-12. That same day, shortly after filing the motion to compel, Relator's counsel left a voicemail for defense counsel seeking to meet and confer on his belated motion to seal.[6] *See* **Ex. A**, Beckley Decl. ¶ 23. In his voicemail, Relator's counsel indicated that he filed the Motion to Compel because he thought the parties would not "reach a resolution without Court intervention so [he] went ahead and did that." *Id.* Twenty-one minutes later, counsel for Relator filed the Motion for Leave to File Documents Under Seal ("Motion to Seal"). ECF No. 208. Relator asserted that counsel for South Bay "were unavailable and have not indicated they agree to the relief requested by th[e] motion." *Id.* at 2.

While it is unclear what Relator's rush was, what is clear that Relator has always intended to involve the Court in this discovery dispute, having questioned South Bay's Rule 33(d) response to Interrogatory No. 2 from the get-go, prior to even receiving all of the documents containing responsive information. Simply put, Relator seeks an escape hatch that would excuse her from reviewing the documents her counsel demanded that South Bay produce. In any event, South Bay has not produced a mass of documents and left it to Relator to identify the responsive material. Nor has South Bay "declined to answer" Interrogatory No. 2, as Relator mischaracterizes. Mem. at 5. Rather, South Bay has properly invoked Rule 33(d) and identified by Bates number the documents from which the answers to Interrogatory No. 2 can be derived, including but not limited to the handwritten, hardcopy supervision notes that Relator demanded. Counsel for South Bay has further worked with its client to retrieve even more information for Relator in an effort to reach a

---

[6] *See* L.R. 7.2(d) ("Motions for impoundment must be filed and ruled upon prior to submission of the actual material sought to be impounded, unless the court orders otherwise.").

compromise.   South Bay has complied with its discovery obligations and is under no obligation to summarize the contents of the produced materials to Relator.  Relator's motion should be denied.

## III.    LEGAL STANDARD

South Bay properly relied upon Fed. R. Civ. P. 33(d) in response to Interrogatory No. 2, which seeks a vast amount of particularized information regarding South Bay employees from January 1, 2009 to the present.  Rule 33(d) provides:

> (d) OPTION TO PRODUCE BUSINESS RECORDS. If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

To rely on Rule 33(d), South Bay must only: (1) adequately identify the records from which the information requested can be derived; (2) represent that the answer to Interrogatory No. 2 will be found in the business records South Bay identifies; (3) establish that there would be a sufficiently onerous burden if it is not permitted to invoke Rule 33(d); and (4) show that the burden of deriving the information from the business records is substantially the same for South Bay as for Relator.  *Torres v. Johnson & Johnson*, No. 3:18-10566-MGM, 2018 WL 4054904, at *2 (D. Mass. Aug. 24, 2018) (citing *Sabel v. Mead Johnson & Co.*, 110 F.R.D. 553, 556–57 (D. Mass. 1986)); *see also FM Generator, Inc. v. MTU Onsite Energy Corp.*, No. 14-14354-DJC, 2016 WL 8902603, at *5 (D. Mass. Aug. 25, 2016); *Corvello v. New England Gas Co., Inc.*, No. 05-221T, 2008 WL 311123, at *1 (D.R.I. Feb. 1, 2008) ("[W]here the answer to an interrogatory may be derived from business records and the burden in deriving the answer therefrom is substantially the

14

same for both parties, it is sufficient to respond to an interrogatory by specifying and making available business records.").

Despite Relator's "belief" that South Bay should provide its response to the interrogatory by preparing work product for Relator in a chart format summarizing South Bay's documents (Mem. at 8–9), Rule 33(d) contains no such requirement—it certainly does not require the producing party to summarize the contents of documents for the requesting party. *See Rhoades v. Young Women's Christian Ass'n of Greater Pittsburgh*, No. 09-261, 2009 WL 3319820, at *5 (W.D. Pa. Oct. 14, 2009) ("under [Rule] 33(d) it is unnecessary for Defendants to summarize documents which they have provided to Plaintiff"). *Cf. Flying J. Inc. v. Pilot Travel Centers LLC*, No. 1:06-cv-00030, 2009 WL 10672940, at *2 (D. Utah Apr. 6, 2009) (explaining that Rule 33(d) "requires only that a party *produce* the information in its possession—the producing party may decide not to perform [the] requesting party's desired analysis of the data when the burden of ascertaining the answer is the same for each party.") (emphasis in original). *See also* Fed. R. Civ. P. 33(d) advisory committee's note to 1980 amendment (making clear a party permitted to offer records in lieu of answering an interrogatory must "offer them in a manner [that] permits the same direct and economical access that is available to the party.").  As discussed below, South Bay has fully satisfied the requirements of Rule 33(d).

IV.    **ARGUMENT**

   A.    <u>**The Motion Should Be Denied Due to Relator's Failure to Review the Produced Records**</u>

At the core of Relator's motion lies a contradiction.  On the one hand, Relator argues that South Bay has produced ***too much*** information in response to Interrogatory No. 2, noting that "South Bay has produced more than 180,000 pages of documents" and has indicated that "a large

subset of them [are] responsive to Interrogatory No. 2."[7]  Mem. at 9.  On the other hand, Relator argues that South Bay has not produced ***enough*** information for her to obtain the answers to Interrogatory No. 2.  Mem. at 2.  Indeed, Relator states with confidence that "[t]he information called for by Interrogatory No. 2 cannot be ascertained from the materials South Bay has identified as being responsive," Mem. at 2, even though Relator seems to concede that they have not finished reviewing the documents that South Bay has produced pursuant to Rule 33(d), Mem. at 9 (qualifying Relator's review as "to-date"); 15 (mischaracterizing that documents have been "newly produced" and representing that she has "not yet been able to complete her review of each and every one" of the produced records).  This, in and of itself, is a basis to deny Relator's Motion to Compel.  *See Torres*, 2018 WL 4054904, at *4 (denying motion to compel where plaintiff alleged deficiencies in interrogatory responses without reviewing the documents produced and identified under Rule 33(d)).

Despite South Bay's diligent efforts to provide and highlight this information, Relator argues that South Bay did "not appear to have provided" spreadsheets for claims submitted in 2009-2015, and focuses only on two spreadsheets, SB00153160 and SB00153159, which constitute records pulled from South Bay's Credible system.  Mem. at 11.  However, as stated above, South Bay produced the AR Plus spreadsheets and identified those spreadsheets in its supplemental responses to Interrogatory No. 2.  This was yet again explained to Relator's counsel as recently as earlier this month.  Relator should know—had she reviewed what was produced to her—that the spreadsheets (1) exist; and (2) contain data from which Relator can ascertain much information called for by Interrogatory No. 2, including the clinician's name, education level, date

---

[7] A large percentage of these documents — 20,442 documents totaling 173,391 pages — are the handwritten and/or hardcopy supervision records ***specifically required*** by Relator.  *See* **Ex. A**, Beckley Decl. ¶ 11.

of service, and the amount billed to MassHealth.  *See* **Ex. A-11** at 2, 3; **Ex. A-15** at 9, 22.  And, as previously disclosed to Relator, these spreadsheets do not contain supervision information, which was stored in hardcopy, but all related hardcopy supervision documentation was produced ***as demanded by Relator***.  In short, Relator's contention about purported missing documents is not only incorrect, but demonstrates that she has not taken the time to review the documents South Bay highlighted in response to Relator's interrogatories.  The Court should deny her motion on this ground alone.

### B.  <u>South Bay Adequately Identified the Records Produced in Response to Interrogatory No. 2</u>

Relator's motion should also be denied because South Bay has collected, produced, and adequately identified documents from which the answer to Interrogatory No. 2 may be derived. Relator's claims of deficiency seem to be little more than a complaint that South Bay should not be allowed to rely on Rule 33(d) to answer Relator's interrogatories, full stop.

 South Bay did not just produce a mass of documents and refer Relator generally to the documents.  Rather, South Bay adequately represented that the answers to Interrogatory No. 2 would be found in the business records by identifying by Bates number the records through which the answer to Relator's interrogatories may be derived in all of its production letters.  *See, e.g.*, **Ex. A-11** at 1–2).  *Compare Torres*, 2018 WL 4054904, at *3 (concluding that the defendant adequately represented that information was responsive to plaintiff's interrogatory request because it had described and identified by bates number responsive documents), *with FM Generator, Inc*., 2016 WL 8902603, at *6 (finding that that producing party did not meet the specificity requirement under Rule 33(d) because it referred to "an entire database" of information).

In addition, as highlighted for Relator, the Credible and AR Plus claims spreadsheets provide clinician names, education levels, dates of service, and amounts billed to MassHealth

during the relevant time period. Licensure information for each of these clinicians is a matter of public record, and despite Relator's contention to the contrary, Mem. at 12-13, South Bay was not required to include supervision or licensure information in MassHealth bills. Still, South Bay has also produced current license and supervision information from the Credible system, as well as all of its hardcopy supervision documentation from 2009-2015 before the implementation of its electronic health records system. Other documents identified in South Bay's production letters and interrogatory responses serve to supplement the information contained in the system spreadsheets, including but not limited to, an employee roster spreadsheet (SB00010036, **Ex. A-15** at 9), personnel spreadsheet (SB00156036–39[8], **Exs. A-11** at 1; **A-15** at 8), supervision audits (SB00153160, **Exs. A-11** at 1; **A-15** at 8); (SB00154605-155287, **Exs. A-11** at 1; **A-15** at 8); (SB00156036–39[9], **Exs. A-11** at 1; **A-15** at 8); (SB00156042, **Exs. A-11** at 1; **A-15** at 8); (SB00150137, **Ex. A-11** at 2; **A-15** at 9); (SB00150146, **Exs. A-11** at 2; **A-15** at 9); (SB00150155, **Exs. A-11** at 2; **A-15** at 9); (SB00150160, **Exs. A-11** at 2; **A-15** at 9); (SB00157085–SB00330614,[10] **Exs. A-12** at 1; **A-15** at 8), the AR Plus and Credible spreadsheets (SB00154598-154604 **Exs. A-11** at 3, **A-15** at 9; SB00153160 and SB00153159, **Exs. A-11** at 1–3; **A-15** at 8–9, 22), and waiver tracking data (SB00155297-155478 **Exs. A-11** at 2; **A-15** at 11), (SB00155517-155649 **Exs. A-11** at 2; **A-15** at 11), (SB00156052-156182, **Exs. A-11** at 2; **A-15** at 11). In addition, following the February 1, 2019 call between counsel, and as Relator's counsel was well aware, South Bay's counsel has worked with their client's technology staff in a review of the Credible system to determine whether there was any way to access and rebuild the otherwise

---

[8] This was inadvertently described in **Ex. A-11** as "SB00150536-156039."
[9] This was inadvertently described in **Ex. A-11** as "SB00150536-156039."
[10] This was inadvertently described in **Ex. A-15** as "SB00157085-4330614."

unavailable historical information from that system.  **Ex. A**, Beckley Decl. ¶¶ 21–22.  Accordingly, South Bay has now produced even more supervision and licensure information to Relator.

Finally, with respect to the hardcopy records, Relator has no basis to express discontent with the volume and format of the hardcopy and handwritten supervision records that pre-date 2015.  Mem. at 9 (claiming that "many of the 180,000 pages of records are handwritten and barely decipherable.").  As noted above, in August 2018, South Bay's counsel directed Relator to a set of nearly 7,000 hardcopy supervision records already in Relator's possession.  *See* Ex. **A-7** at 1–2.  Relator nonetheless demanded that South Bay produce ***all of its*** hardcopy supervision records despite the burden this placed on South Bay.  Relator cannot now claim that these documents are somehow deficient when she has been aware of their format since at least August 2018.  Moreover, the fact that certain handwritten information contained in the production may be difficult to decipher or may involve reviewing multiple documents to ascertain an answer is purely a function of the records available—it does not render South Bay's answers deficient.  *See, e.g.*, *C.A. v. AMLI at Riverbend, L.P.*, No. 1:06-CV-1736 SEB-DML, 2009 WL 1605807, at *3 (S.D. Ind. June 3, 2009) (explaining that Rule 33(d) "simply provides no basis" to order the answering party "to compile [records] in a form that makes the information more accessible" or "go back and create" records); *Sadoftky v. Fiesta Prod., LLC*, 252 F.R.D. 143, 148 (E.D.N.Y. 2008) ("Where an unequal burden does not exist between the parties, the court will allow the responding party to produce business records, even if the interrogating party must examine multiple documents to ascertain the answers to its interrogatories.").

### C.  Relator's Request Would Impose an Extreme and Undue Burden on South Bay

Relator argues that South Bay should be ordered to answer Interrogatory No. 2 in the "traditional manner" pursuant to Rule 33(b)(3) in "narrative or table form."  Mem. at 7.  Leaving aside the fact that Rule 33(d) has been part of the Federal Rules of Civil Procedure since 1970 and

as such is not a nontraditional option, nothing requires South Bay to summarize the documents responsive to Interrogatory No. 2 for Relator. *See Rhoades*, 2009 WL 3319820, at *5 ("under [Rule] 33(d) it is unnecessary for Defendants to summarize documents which they have provided to Plaintiff").

Moreover, what Relator is seeking—work product in the form of an extensive chart organized for her convenience—would place a substantial and unreasonable burden on South Bay. Relator points to a document prepared in a different case, *United States ex rel. Escobar v. Universal Health Services, Inc.* ("*Escobar*"). Mem. at 7–8. Importantly, however, the allegations in *Escobar* are limited to a single facility in Massachusetts, and a time period of 2005-2011. *See Escobar*, 842 F.3d 103, 108, 111–12 (1st Cir. 2016). By contrast, here, the case concerns ***eighteen facilities*** in Massachusetts, and a time period of ***nearly a decade***. In *Escobar*, it took approximately 700 attorney and paralegal hours to prepare the document for the single facility at issue in that case. **Ex. A**, Beckley Decl. ¶ 24.

Doing the same here would consume exponentially more attorney and paralegal hours to prepare, as it would be an entirely manual exercise involving reviewing and summarizing *the same documents already in Relator's possession*. This is work product that Relator, if she wants it, should be required to create. It is clear that Relator has not even attempted in good faith to do so, instead hoping to foist the burden of doing her own work on South Bay. Of course, if Relator actually undertakes to create her desired work product and still believes there are gaps in information, she can certainly raise those gaps with South Bay.

The parties are in the beginning stages of fact depositions, and have a mediation scheduled for April 2, 2019. South Bay is a behavioral health provider that provides mental health services to some of the neediest, low-income residents of the Commonwealth. ACC ¶¶ 12, 19. In fact, as

Relator is aware, South Bay's limited financial and staffing resources are often strained.[11]  To require South Bay, in the midst of this activity, to incur the time and expense of creating a burdensome piece of work product for Relator summarizing what it has produced would pose an extreme burden on South Bay's limited resources—a burden that it is not required to take on.  *See Minter v. Wells Fargo Bank, N.A.*, 286 F.R.D. 273, 277 (D. Md. 2012) (explaining that Rule 33(d) "serves to 'put the burden of extracting and collating the information on the party seeking it in cases in which it would be time-consuming and expensive to extract'" the data) (internal citations omitted).  The amount of work this would require would likely necessitate an extension on impending case deadlines.

In short, Interrogatory No. 2 called for a significant amount of information.  *See Torres*, 2018 WL 4054904, at *3 (finding plaintiff's request for the defendant to identify all current and former employees involved in various projects related to a product as "overly broad and unduly burdensome.").  South Bay worked in good faith to respond both to the Interrogatory and Relator's document requests, producing documents Relator demanded despite South Bay's unsuccessful requests to narrow the scope of the production.  The information Relator seeks in her Interrogatory No. 2 is contained in those documents.  That should be the end of the story.

### D.  The Burden of Deriving Relevant Information is Equal for Both Parties

Relator's main complaint seems to be that she should not have to review South Bay's "voluminous hand-written notes," Mem. at 11, and "hundreds of thousands of pages of business records," Mem. at 2, despite the fact that Relator specifically requested these records.  Without a

---

[11] The Medicaid population in Massachusetts is chronically underserved, and many MassHealth members who need mental health services go untreated every day.  *See, e.g.*, Access to Behavioral Health Care in Mass., Blue Cross Blue Shield Foundation (July 2017), https://bluecrossmafoundation.org/sites/default/files/download/publication /BH_basics_Final.pdf at 6, 15 (reporting that 45.7% of adults in Massachusetts with a mental health disorder reported not receiving any mental health care, while 59% of Massachusetts youth who experienced a major depressive episode received no mental health services).  South Bay currently has a waiting list of 5,258 patients, nearly all of whom are MassHealth members.

doubt, Relator seems most affronted that "South Bay seeks to place the burden on Relator to go through its documents to piece together its answers to her interrogatory." Mem. at 2. But this is precisely the situation Rule 33(d) was designed to address. *See* Fed. R. Civ. P. 33(d) advisory committee's note to 1970 amendment (explaining that this section was intended to "alleviate[] a problem which in the past has troubled Federal courts" and allow a party to respond to an interrogatory without "engag[ing] in burdensome or expensive research into his own business records in order to give an answer"). Relator is at least equally as able as South Bay to review the produced documents and derive the information called for in Interrogatory No. 2, even if that involves reviewing multiple documents. *See, e.g., Sadoftky v. Fiesta Prod., LLC*, 252 F.R.D. 143, 148 (E.D.N.Y. 2008). To the extent Relator contends that "cross-check[ing]" South Bay's handwritten records against the produced claims spreadsheets is "impossible," Mem. at 10, that claim is baseless and, in any event, under Relator's logic it would presumably be "impossible" for South Bay as well.

Relator asserts that the burden is not equal because South Bay has access to employees who are familiar with the records, who know "how they were maintained, and the hand-writing of the individuals" who were involved in creating the records. Mem. at 15. To be clear, Interrogatory No. 2 calls for particularized information for eighteen South Bay clinics dating back to January 1, 2009, approximately ten years ago. As highlighted by Relator, there has been significant employee turnover in both the clinical and administrative functions at South Bay. *See, e.g.*, ACC ¶ 206. Most of the counselors, social workers, supervisors, clinical directors, and regional directors who created and reviewed these hardcopy records are no longer employed at South Bay. Under these facts, Relator's "familiarity" argument lacks merit. Besides, Relator's argument would effectively

read Rule 33(d) out of the Federal Rules of Civil Procedure, as the party that produced documents could always be deemed "more familiar" with them than the party who requested them.

### E.  **Relator's Violation of the Local Rules Warrants Denial of the Motion**

Under Local Rule 7.1 "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."  L.R. 7.1(a)(2).  These meet and confer rules are not just for show.  They are designed to require parties to work together to compromise and resolve discovery disputes, and to avoid seeking Court intervention wherever possible.  *See Martinez v. Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016) ("A Local Rule 7.1 certification is not an empty exercise.  Local Rule 7.1 serves a meaningful dual role: it fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources.").  When a party only pays lip service to the conferral requirements, and moves to compel before giving the other party an opportunity to address those concerns, the moving party violates both letter and spirit of this Court's rules.  *See Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996) (concluding defendant's motion to compel was premature and violated the local rule to meet and confer because the parties "had no yet reached an impasse" in the discussion about document requests).[12]

This is particularly true when the events leading to the filing of a motion to compel demonstrate that the moving party never had any intention of seeing the conferral process through. *See Inhalation Plastics, Inc. v. Medex Cardio-Pulmonary, Inc.*, No. 2:07-cv-116, 2010 WL 1445171, at *2-3 (S.D. Ohio 2010) (denying motion to compel and finding plaintiff did not meet

---

[12] In fact, "failure to comply with the rule constitutes sufficient grounds for a monetary sanction under the court's inherent power to control its dockets." *Hubbard*, 172 F. Supp. 3d at 385; *see also Accusoft Corp. v. Quest Diagnostics, Inc.*, No. 12-cv-40007, 2014 WL 1393749, at *2 (D. Mass. Apr. 7, 2017) ("It is settled that a court is within its discretion to award monetary sanctions for a violation of the local rules.") and L.R. 1.3 ("[f]ailure to comply with any of the directions or obligations set forth in, or authorized by, [the local rules] may result in dismissal, default, or the imposition of other sanctions as deemed appropriate by the judicial officer.").

and confer in good faith because after plaintiff identified the deficiencies in defendant's discovery responses, and defendant "contemplated a detailed further response," the plaintiff refused to discuss further with defendant).

This is what happened here. Given Relator's complaints about South Bay's reliance on Rule 33(d) prior to even receiving or reviewing South Bay's documents, and given Relator's decision not to wait for South Bay's response to Relator's most recent complaints on that score, it is clear that it was always Relator's intention to drag this Court into a discovery dispute that could have been resolved without Court intervention. As Relator was aware, South Bay has been working diligently and in good faith to respond to Relator's complaints, including expending time, money, and effort to gather additional information in an effort to reach a compromise and resolve those complaints. Relator's decision to abruptly abort the meet and confer process and instead file its Motion is an unnecessary drain on the resources of the Court and the parties, and a violation of the letter and spirit of the meet and conferral rules. It is certainly not a showing of the good faith required by those rules. Accordingly, Relator's motion should be denied.

## V.    CONCLUSION

For the reasons set forth above, South Bay respectfully requests that the Court deny Relator's Motion to Compel, and respectfully requests oral argument in this matter.

Dated: February 28, 2019                    Respectfully submitted,


                                            /s/ Shamis N. Beckley
                                            Mark W. Pearlstein (BBO # 542064)
                                            Laura McLane (BBO # 644573)
                                            Shamis N. Beckley (BBO # 697425)
                                            MCDERMOTT WILL & EMERY LLP
                                            28 State Street
                                            Boston, MA  02109-1775
                                            mpearlstein@mwe.com
                                            lmclane@mwe.com
                                            sbeckley@mwe.com
                                            Telephone: (617) 535-4000
                                            Facsimile: (617) 535-3800

                                            *Counsel for South Bay Mental Health
                                            Center, Inc.; Community Intervention
                                            Services, Inc.; Community Intervention
                                            Services Holdings, Inc.; H.I.G. Growth
                                            Partners, LLC; and H.I.G. Capital, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 28, 2019.

/s/ Shamis N. Beckley