# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CHRISTINE MARTINO-FLEMING, Relator, <br><br> and <br><br> COMMONWEALTH OF MASSACHUSETTS, ex rel. CHRISTINE MARTINO-FLEMING, <br><br>   Relator, <br><br> vs. <br><br> SOUTH BAY MENTAL HEALTH CENTER, INC., COMMUNITY INTERVENTION SERVICES, INC., COMMUNITY INTERVENTION SERVICES HOLDINGS, INC., H.I.G. GROWTH PARTNERS, H.I.G. CAPITAL, LLC., PETER J. SCANLON, AND KEVIN P. SHEEHAN <br><br>   Defendants. | Civil Action No. 15-cv-13065 |

## RELATOR'S SUPPLEMENTAL SUBMISSION IN SUPPORT OF HER MOTION TO COMPEL ANSWERS TO INTERROGATORIES

On May 8, 2019, Magistrate Judge Cabell heard arguments on Relator's Motion to Compel Answers to Interrogatories, ECF No. 207, and subsequently requested that South Bay make a supplemental submission of letters transmitting business records responsive to Relator's interrogatories. ECF No. 224. South Bay also submitted a corrected copy of the summary chart it prepared and produced for the first time at the hearing, ECF No. 227-2, as well as a subset of 14 of the more than **180,000** pages of documents produced in lieu of a written answer to Relator's Interrogatory No. 2. ECF No. 227-3 through 227-17. Relator makes this supplemental submission to respond to the assertions in South Bay's supplement, and to highlight deficiencies and gaps in the documents it attached thereto.

1

**I.  Relator cannot determine South Bay's answers to her interrogatory from the documents South Bay produced because those records are unreliable and incomplete.**

Rule 33(b)(3) requires that a responding party answer each interrogatory fully in writing and under oath. Rule 33(d) provides an exception, allowing the responding party to produce business records, but ***only where the answer to the interrogatory may be determined from the records***. Setting aside the threshold question of the relative burden between the parties in ascertaining the answer from the business records,[1] where, as here, the information requested in the interrogatory is not contained within them—or where the requesting party cannot derive the information from them herself —Rule 33(d)'s business-records option is simply not available. Fed. R. Civ. P. 33, Advisory Committee's note to 1970 Amendment (the responding party "may not impose on the interrogating party a mass of records as to which research is feasible only for one familiar with the records"); *Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-2389 SJO (SS), 2016 WL 11266869, at *8 (C.D. Cal. Oct. 18, 2016) (holding that Rule 33(d) only applies where "the answer to the interrogatory is capable of being determined by examining the records without further explanation," and when this is not possible, "a narrative response is both more practical and required by the Rules."); *see also Sabel v. Mead Johnson and Co.,* 110 F.R.D. 553, 556 (D. Mass. 1986) (holding that it is improper under Rule 33 for a party to respond to an interrogatory by producing documents and stating that "information, *if any*," responsive to the request is contained within them).

---

[1] As emphasized by Relator in her Motion and during the hearing, the threshold requirement for invoking Rule 33(d) is that the burden of deriving the interrogatory answers from the documents be "substantially the same for either party." Fed. R. Civ. P. 33(d); *see also id.,* Advisory Committee's note to 1970 Amendment ("the interrogating party is protected against abusive use of this provision through the requirement that the burden of ascertaining the answer be substantially the same for both sides.") Relator continues to assert that South Bay cannot satisfy this requirement here, but will not further belabor the point in this supplemental submission.

### A. Pre-2015 Supervision Records

Relator and her co-plaintiff, the Commonwealth of Massachusetts (which has settled with South Bay but continues to pursue cases against its co-defendants on the basis of South Bay's submission of false claims), allege that South Bay submitted false claims for payment for mental health services provided to Massachusetts Medicaid (MassHealth) patients by unlicensed, unqualified, and unsupervised clinicians. Amended Consolidated Complaint, ECF No. 201. Accordingly, Interrogatory 2(d) asks South Bay to identify all supervisors it contends provided the direct and continuous supervision to unlicensed clinicians required by MassHealth regulations at 130 C.M.R. § 429.424. *See* Relator's First Set of Interrogatories to South Bay Mental Health Center, Inc., attached hereto as **Exhibit A**, at 9 (defining "supervisor" and "supervision"), 10-11 (requesting that South Bay identify its supervisors and specific information about them).

As evidenced from the documents attached as exhibits to South Bay's supplemental submission, Relator cannot ascertain South Bay's answer by examining the business records it produced in response to her interrogatory. According to Exhibit 2 to its supplement, the only business records South Bay produced that contain this information for the years 2009-2015 are all hardcopy records.[2] In its supplement, South Bay produced one exemplar hardcopy

---

[2] Throughout the relevant time period, however, South Bay's HR department used electronic "12-week reports" listing each clinician and their supervisor. Defendants have produced 567 of these reports in the case, but have not identified them as responsive to Interrogatory 2(d), despite conceding that they do list "individual[s] who provided supervision to the clinician[s]." *See* Ltr. to K. Lownds, attached hereto as **Exhibit B**, at 2. Plaintiffs have reviewed each and every one of these reports and used them to prepare an initial damages estimate based on the understanding that they—and not the hard-copy supervision files—accurately reflect the individuals who supervised unlicensed clinicians at South Bay, in part because Sara Hart, South Bay's current President and Chief Operating Officer, testified that when directed to audit the supervision provided to South Bay's unlicensed clinicians, she relied on these same 12-week reports. *See* Commonwealth's Supplemental Responses and Objections to Defendants' First Set of

supervision record (SB Ex. 14, SB00185077) and claims that while some of the record is illegible, Relator "can certainly glean the name of the *clinician*…from the remainder[.]" ECF No. 227 at 5 (emphasis added). But this is irrelevant: Interrogatory 2(d) asks South Bay to identify *supervisors*, not clinicians, and as this record demonstrates, it is simply impossible for anyone unfamiliar with the handwriting or signatures of the supervisors to decipher who this clinician's supervisors were. The second page of the file, for instance, contains a 2011 clinical supervision note listing a supervisor by the first name of "Laura" and containing an illegible signature:[3]

Clinical Supervision Note

Clinician: Kristina L   Date: 7/12/11
Supervisor: Laura   Third Party: _____

Supervisee's Signature: _____
Supervisor's Signature: _____

SB Ex. 14 at SB00185078.[4] The third page of the file is a licensure supervision record that only identifies the supervisor by his or her signature, which is also illegible:

---

Interrogatories, attached hereto as **Exhibit C**, at 4, 19; Hart Dep. Tr., attached hereto as **Exhibit D**, at 140:15-141:3. Plaintiffs also based this analysis on the unreliability of South Bay's hardcopy business records. Amended Consolidated Complaint, ECF No. 201, at ¶ 180 (alleging that South Bay's clinicians falsified supervision records in the hard-copy supervision folders "in case they were ever audited").

[3] By Relator's count, South Bay's Employee Roster (SB Ex. 3, SB00010036) lists 30 different employees with the first name Laura.

[4] Most all of the other pages of the file likewise list the supervisor only by first name. A few pages do list a last name, but it is difficult to decipher. *See, e.g.,* SB Ex. 14 at SB00185151 (listing a supervisor by the name of Megan with a last name that might begin with "Roh.")



SB Ex. 14 at SB00185079.

Relator plainly cannot, then, use this or any of the other illegible and incomplete hard copy records to determine South Bay's answer to Interrogatory 2(d). If South Bay claims that these are the only business records from which it can answer the interrogatory, but it cannot decipher them either, it must amend its interrogatory responses to say so. If it can decipher them, however, Rule 33(b)(3) requires that it do so to answer the interrogatory in the traditional manner, "fully in writing under oath." To the extent that South Bay claims that this would be cost-prohibitive, Relator is willing to share the costs, provided that South Bay presents her with—and the parties come to agreement on—a proposal setting out its estimate of the scope of work, the amount of time to complete, and the cost.

### B. Post-2015 Supervision Records

According to its summary chart, for the post-2015 time period supervision was documented in four types of spreadsheets, which South Bay attached to its supplement as Exhibits 7, 8, 9, and 16.[5] Because each of these spreadsheets contain multiple fields listing "supervisors"—and because these fields often conflict with each other, as well as with other documentation—Relator cannot use them to answer Interrogatory 2(d), since she cannot ascertain which of the multiple people listed as "supervisors" South Bay contends were the ones

---

[5] Exhibits 8 (SB00537187) and 9 (SB00537188, -89) were produced on February 28 and March 15, 2019, after Relator filed her Motion to Compel and more than 250 days after Relator served her interrogatories. *See* ECF No. 227-1 at 68, 71.

who provided the direct and continuous supervision to unlicensed clinicians required by 130 C.M.R. § 429.424.

Exhibit 7, SB00153160, for instance, is a spreadsheet that purports to contain responsive information for November 2015-August 2018, less than one-third of the relevant time period.[6] It lists two different supervisor fields ("Supervisor" in column H, and "Licensed Supervisor" in column I), and in many instances these fields conflict with each other; in others, both fields are blank:

| H | I |
|---|---|
| of running this report" | |
| Supervisor* | Licensed Supervisor* |
| Evan Colbert, LICSW | Evan Colbert, LICSW |
| Laura Adams, LICSW | Laura Adams, LICSW |
| Sarah Harris, LMHC | Charles Vohs, LMHC |
| Ashley Maryyanek, LICSW | Charles Vohs, LMHC |
| Jonathan Farr, MS, LMHC | Kristin Koch, LMHC |

By way of further example, Exhibit 8, SB00537187, also contains multiple supervisor fields, which in many instances conflict with each other or are blank:

| O | P | Q |
|---|---|---|
| Service Employee Supervisor* | Service Employee Licensed Supervisor* | Service Empl Lic Supv Update |
| Rebecca M Green, MA | Charles Vohs, LMHC | Charles Vohs |
| Rebecca M Green, MA | Charles Vohs, LMHC | Charles Vohs |
| Rebecca M Green, MA | Charles Vohs, LMHC | Charles Vohs |
| Rebecca M Green, MA | Charles Vohs, LMHC | Charles Vohs |
| | | Missing ID |

SB Ex. 8, SB00537187 ("SB OP 2015" tab).

Thus, while South Bay claims that it has produced business records from which Relator can determine South Bay's answer to Interrogatory 2(d)—that is, which individuals South Bay contends provided the direct and continuous supervision to unlicensed clinicians required by 130

---

[6] Because it only contains credentials, licensure, and supervision information current *as of the date the report was run in 2018,* this document does not actually provide responsive credentialing, licensure, or supervision information for this time period.

C.M.R. § 429.424, and when—the records themselves confirm that she cannot. Accordingly, South Bay should be required to amend its interrogatory response to identify which column in the post-2015 spreadsheets identifies the person it contends provided the supervision to unlicensed clinicians required by 130 C.M.R. § 429.424.

**II.    South Bay must specify what responsive information it does not have in its possession and is not contained in its business records**

In its supplemental submission, South Bay concedes for the first time that the documents it produced in response to Relator's interrogatory do not contain all of the information she requested and that the MassHealth regulations require, "such as prior work histories[.]"[7] South Bay Supp. Submission, ECF No. 227 at 6. It fails to specify what other requested information is missing from the mass of documents it produced, and instead suggests that it is up to the Relator to comb through all 180,000 pages of them, identify the missing or unintelligible information, and confer with South Bay on a document-by-document basis. *Id.* at 6-7 ("to the extent that Relator has questions about certain documents, or believes they are indecipherable, Relator needs only to ask South Bay about those documents, and South Bay will provide the answer to the extent it has it.").

This is completely antithetical to the letter and intent of Rule 33. It is axiomatic that it is the ***responding party*** that must either answer the interrogatory in writing and under oath or produce documents that actually contain the information requested by it. Fed. R. Civ. P. 33(b)(1)

---

[7] Interrogatory 2(b) requests this, among other information, because MassHealth explicitly requires that clinicians providing mental health services to MassHealth members, as well as supervisors and clinic directors, have specific kinds and levels of prior experience. *See, e.g.,* 130 C.M.R. § 429.424(C)(2) (requiring that social workers have two years of full-time supervised clinical work experience); *id.* at § 429.423(B)(1) (requiring that clinic directors have at least five years of full-time clinical work experience, including two in an administrative capacity); *id.* at § 429.439(C) (expressly conditioning reimbursement on clinical directors meeting the requirements of 130 C.M.R. § 429.423(B)).

(interrogatories must be answered by party to whom they are directed or officer or agent thereof); *FM Generator, Inc. v. MTU Onsite Energy Corp.,* No. CV 14-14354-DJC, 2016 WL 8902603, at *5 (D. Mass. Aug. 25, 2016) (holding that in order to invoke Rule 33(d), the party must affirm that the information sought is actually contained in the records). South Bay cannot both invoke Rule 33(d) to produce documents that admittedly ***do not*** contain the requested information and also decline to answer the interrogatory in writing as required by 33(b)(3). If its business records contain "discrete gaps," ECF No. 227 at 6, it is up to South Bay to identify them and supplement its interrogatory response to state them with specificity.

To be clear, and contrary to South Bay's claim, ECF 227 No. at 6, Relator does not suggest that Rule 33 requires South Bay to research or compile information that is not in its possession. She does, however, assert that the onus is on South Bay, as the responding party, to specify with particularity what information responsive to her interrogatory—including the specific subparts thereto—is actually contained within its documents, as well as what information is not. In the case of work histories, for instance, Rule 33(b)(3) requires that South Bay amend its interrogatory response to explicitly state that it does not have this information. It cannot, as it seeks to do here, force this obligation onto Relator by requiring her to go through each of the 180,000 pages of documents to identify which of the requested information is not contained within them.

### III. South Bay should be ordered to amend its interrogatory response to incorporate and affirm the representations made in its summary chart

As set out in Relator's Motion to Compel, ECF No. 207-1 at 8-12, merely specifying Bates numbers for documents that presumably contain responsive information is not sufficient under Rule 33(d), yet that is all that South Bay's sworn interrogatory response does. ECF No. 207-4. Instead, "the producing party must affirm that the information sought by the interrogatory

is in fact discoverable in the specified records." *FM Generator, Inc.*, 2016 WL 8902603, at *5; *see also Licensed 2 Thrill, LLC v. Rakuten, Inc.*, No. CV 13-11257-DJC, 2015 WL 13376540, at *3 (D. Mass. Oct. 13, 2015) (same).

During the hearing on the Motion to Compel, South Bay's counsel not only produced the summary chart attached as Exhibit 2 to its supplement for the first time, but also "affirmed" that the information contained within it is accurate and complete. Rule 33(d), however, is not satisfied by counsel's affirmation; it requires that the responding *party* affirm that the specified records contain the information sought by the interrogatory. *Id.; see also Mulero-Abreu v. Puerto Rico Police Dept.*, 675 F.3d 88, 92-93 (1st Cir. 2012) (holding that plaintiffs' cover letters identifying documents previously produced as responsive to interrogatories insufficient under Rule 33). Accordingly, to the extent South Bay intends for its summary chart to affirm which documents contain specific categories of information requested by Relator's interrogatory and the subparts thereto, it must amend its interrogatory response to say so.

### IV.   Conclusion

For the foregoing reasons, and as set out more fully in Relator's Motion to Compel, Relator respectfully requests that the Court grant the Motion and order South Bay to supplement its response to Interrogatory No. 2.

Dated: May 16, 2019                                         Respectfully submitted,

**WATERS & KRAUS, LLP**

By: /s/ *Caitlyn E. Silhan*
Charles Siegel (*pro hac vice*)
Texas State Bar No. 18341875
Pennsylvania State Bar No. 310882
Caitlyn E. Silhan (*pro hac vice*)
Texas State Bar No. 24072879
California State Bar No. 303177
3141 Hood Street, Suite 700

Dallas, Texas 75219
214-357-6244 (Telephone)
214-357-7252 (Facsimile)
siegel@waterskraus.com
csilhan@waterskraus.com

**HAMILTON WINGO, LLP**
Christopher S. Hamilton (*pro hac vice*)
Texas State Bar No. 24046013
Stephen T. Blackburn (*pro hac vice*)
Texas State Bar No. 24043555
Andrea L. Fitzgerald (*pro hac vice*)
Texas State Bar No. 24081982
325 North St. Paul Street, Suite 3300
Dallas, Texas 75201
214-234-7900 (Telephone)
214-234-7300 (Facsimile)
chamilton@hamiltonwingo.com
sblackburn@hamiltonwingo.com
afitzgerald@hamiltonwingo.com

**JEFFREY NEWMAN LAW**
Jeffrey A. Newman
Massachusetts BBO # 370450
One Story Terrace
Marblehead, MA 01945
(617) 823-3217 (Telephone)
(781) 639-8688 (Facsimile)
jeffrey.newman1@gmail.com

***ATTORNEYS FOR PLAINTIFF-RELATOR***

## CERTIFICATE OF SERVICE

I, Caitlyn E. Silhan, hereby certify that this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on May 16, 2019.

By: */s/ Caitlyn E. Silhan*