UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. CHRISTINE MARTINO-FLEMING, Relator, <br><br> and <br><br> COMMONWEALTH OF MASSACHUSETTS, ex rel. CHRISTINE MARTINO-FLEMING, <br><br> Relator, <br><br> v. <br><br> SOUTH BAY MENTAL HEALTH CENTER, INC.; COMMUNITY INTERVENTION SERVICES, INC.; COMMUNITY INTERVENTION SERVICES HOLDINGS, INC.; H.I.G. GROWTH PARTNERS; H.I.G. CAPITAL, LLC; PETER J. SCANLON; and KEVIN P. SHEEHAN, <br><br> Defendants. | No. 1:15-cv-13065-PBS |

**ORDER ON RELATOR'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES (D. 207)**

CABELL, U.S.M.J.:

**<u>INTRODUCTION</u>**

Federal Rule of Civil Procedure 33(d) allows a party responding to an interrogatory to refer the interrogating party to records, if the answer may be determined by examining those records and if the burden of ascertaining the answer will be substantially the same for either party. This motion concerns whether defendant South Bay Mental Health Center (South Bay) properly invoked Rule

33(d) in providing business records to Interrogatory No. 2 of relator Christine Martino-Fleming's (Fleming) First Set of Interrogatories to South Bay Mental Health Center, Inc. (D. 207-3). Fleming contends otherwise and moves pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iii) to compel South Bay to produce a complete answer to the interrogatory. Following briefing, hearing and a review of the documents provided, the court finds that South Bay has properly invoked Rule 33(d) but must clarify and potentially supplement some of the information provided.

## RELEVANT BACKGROUND

Fleming alleges in the underlying complaint that South Bay filed improper claims with MassHealth for services rendered by therapists who were not properly credentialed or supervised under federal regulations. Interrogatory No. 2 requests the following information for January 1, 2009 to present:

Identify each of Your unlicensed and licensed counselors, social workers, supervisors, clinical directors, and regional directors at each South Bay facility, including the following information:

a. Their title, dates of employment, employment status (full or part time), dates holding each title, the specific South Bay facility at which they worked, whether they provided or supervised services provided to MassHealth members, or were otherwise associated, and the dates they provided or supervised services at each South Bay facility listed;

b. The qualifications possessed by each identified person during their employment by or association with You, including post-secondary education history, degrees awarded (including the field in which the degree was awarded), licenses, board certifications and/or

2

eligibility, work history, supervised clinical experience
(including in an administrative capacity), internship
experience, and the dates of the foregoing;

c. The specific dates during which each counselor, social
   worker, supervisor, clinical director, and regional
   director was licensed or unlicensed while employed by or
   affiliated with South Bay;

d. The supervisor, if any, of each counselor, social worker,
   supervisor, and clinical director, including the specific
   dates during which the supervisor supervised the counselor,
   social worker, supervisor, and clinical director;

e. The dates of each counselor, social worker, supervisor,
   and clinical director's first 90 days of employment or
   association with You ("90-day introductory period").

(*Id.*)

In response, South Bay invoked Rule 33(d) and provided
business records in lieu of a narrative response. The number of
documents was substantial, approximately 180,000 pages (D. 212-
14), but South Bay claims that it worked in good faith to provide
the information in as much of a well-organized state as possible.
(D. 212-1). South Bay also gave the relator the Bates numbers of
documents and document ranges containing responsive information.
(D. 212-11; 212-12; 212-13).

The relator objected to many of these documents and in
particular objected to a large volume of handwritten supervisory
documents. The relator claimed that many of the documents were
vague or indecipherable, often providing only the first names for
supervisors, for example. (D. 212-14). South Bay responded that:
the relator had barely examined the documents before objecting to

them; it had previously cautioned the relator that the vast majority of its supervisory records were in hardcopy format only; and the fact that some documents might be difficult to decipher did not render South Bay's answer insufficient. (D. 212-15). The relator filed the present motion when the parties were unable to resolve their disagreements.

At a hearing convened by the court, the relator argued in addition that some documents were inconsistent, that South Bay had not identified the specific information each Bates-stamped category of documents contained, and that South Bay had not affirmed that the requested information could be found in the documents provided. The relator urged that South Bay should be required to answer the interrogatory either in narrative form or a table form similar to one used in *United States et al. ex rel. Escobar v. Universal Health Services, Inc.*, C.A. No. 11-CV-11170 (D. Mass. June 27, 2018).[1]

South Bay demurred. It argued that it had affirmed that the information could be found in the documents provided, and had already borne a substantial burden to categorize the documents to the best of its ability. South Bay also produced for the first

---

[1] In *Escobar,* another court in this session directed the defendants to provide information on their clinicians' qualifications and licensure in table format. *Id*. Electronic Order (June 27, 2018). However, *Escobar* involved only 93 clinicians and seven supervisors, and the defendants produced over 100,000 pages of documents. This matter involves an estimated 8,000-10,000 employees. Mot. Compel 2:13:45-2:15:55 p.m., May 8, 2019, ECF No. 224.

time a detailed index breaking down Interrogatory No. 2 by subcategory and listing the Bates-stamped batches responsive to each category of requested information. (D. 227-2).

At the close of the hearing, the court requested that South Bay file with the court any spreadsheets, indices, or other documents it had provided or would be providing to the relator. South Bay subsequently filed the following materials, which it represented had been provided to the relator prior to the filing of the motion, with the exception of numbers 2 and 8:

1. Emails and letters identifying responsive documents by Bates number.

2. An index to all responsive documents identified by Bates number range and the subpart of Interrogatory No. 2 to which they are responsive.

3. A roster spreadsheet covering employees from 1986-2016 that includes employee name, job title, location, department, hire and termination date, reason for termination, rehire if applicable, contact information, and license name, number, effective date, and expiration.

4. An employee list spreadsheet generated by the Credible behavioral software system (Credible)[2] and providing employee name, title, employment status, home office location, credentials, license number and expiration date, hire and termination date, and program information.

5. A company roster spreadsheet for employees hired from 1990-2018 that provides employee name, hire date and rehire date (if applicable), department, location, employee status, title, contact information, who the employee reports to, and whether the employee has a manager role (SB00537184).

---

[2] South Bay began using Credible brand software for its billing and record-keeping in 2015. Prior to that date, it used a software program called AR Plus for billing only.

6. A supplement to the termination report spreadsheet,
   covering employees from 1986-2018 and including employee
   name, title, location, department, job family, manager,
   contact information, and hire date, rehire date (if
   applicable), termination date, and last day worked
   (SB00537185).

7. A Credible supervision report spreadsheet that provides
   employee name and identification number, program, home
   office, credentials (degree), supervisor, licensed
   supervisor, full time status, and service date for
   unlicensed clinicians with a billable service between
   November 1, 2015 and August 31, 2018 (SB00153160).

8. A Credible "ghost data" spreadsheet[3] containing restored
   supervisor data manually paired with other Credible data
   (SB00537187). The spreadsheet lists services provided from
   November 2015 to February 2019, and provides patient name,
   service number, claim identification number, service type
   and date, CPT code, CPT modifier (if any), employee name
   and identification number, employee title, employee
   credentials, employee supervisor and licensed supervisor,
   payor name, and amount paid.

9. Two additional Credible supervision records spreadsheets
   covering November 2015 to August 2018. (SB00537188-89):

   The first spreadsheet provides Credible claims information,
   including patient name, service number, claim
   identification number, service type and date, CPT code, CPT
   modifier (if any), employee name and identification number,
   employee title, payor name, and amount paid,  as well as
   additional detail if another clinician or supervisor was
   logged with the billable service.

   The second spreadsheet provides logged supervision sessions
   for clinicians, including the clinician name, program, home
   office, identification number, full time or part time
   status, credentials, supervisor, licensed supervisor, date

---

[3] According to South Bay, the Credible software erases historical data in
certain fields when updated data is entered.  For example, if a clinician
started employment as unlicensed in 2017 but received her license in 2018,
the licensed status would be entered and the unlicensed status would be
erased.  South Bay submits that in an effort to settle this discovery
dispute, it made a good faith effort to restore raw data that had been erased
and pair that data with the appropriate spreadsheet entry.

of the logged supervision session, the clinician that
provided the supervision and their license, and the
duration of the supervision session.

10. South Bay Organizational Tables for 2014-2018 that provide
    the name, title, supervisor, division, and site location
    for South Bay employees (SB00153020).

11. A South Bay Personnel Spreadsheet providing name, title,
    credentials, supervisor, licensed supervisor, program, and
    team for various South Bay employees (SB00156036).

12. A sample waiver letter from the Massachusetts Behavioral
    Health Partnership informing South Bay that it would waive
    credentialing criteria to allow a clinician to submit
    claims. (SB00156052).  Due to volume, South Bay did not
    file all the letters produced to the relator.

13. A sample South Bay supervision audit spreadsheet providing
    clinician name, credentials, direct supervisor, licensed
    supervisor and supervisor credentials, location, audit
    review date, and audit results (SB00156038). Due to volume,
    South Bay did not file all of the supervision audit
    spreadsheets it provided to the relator.

14. Sample hardcopy supervision and personnel records pre-
    dating 2015, when South Bay implemented the Credible
    software.  One example is the complete supervision record
    for Kristina Lingertat, three pages of which the Relator
    had cited in her motion as illegible or indecipherable. The
    second is a personnel record that includes a resume
    (SB00157169).[4] Due to volume, South Bay did not file all the
    hardcopy records it produced.

15. A 2009 AR Plus spreadsheet. The other AR Plus spreadsheets
    were not included due to size but have been provided to the
    relator.

16. A Credible claims spreadsheet providing claim information
    from November 2015 to August 2018 (SB00153159)and including
    patient name, service number, claim identification number,
    service type and date, CPT code, CPT modifier (if any),
    employee name, employee title, credentials, supervisor,

---

[4] The relator stated at the hearing on this motion that she could not verify
post-graduate or work history for some employees.  South Bay maintains that
it does not have this information for all its employees but has provided
everything it does have.

licensed supervisor, payor name, and amount paid. The
employee title, credentials and licensure status, and
supervisor and licensed supervisor fields were populated
with current information as of the time the supervision
report was run out of the Credible system.

The filing did not mollify the relator's concerns.  Through
a supplemental filing, the relator continues to object to the
handwritten documents.  The relator argues that to the extent
that South Bay has claimed that the effort to decipher these
documents would be cost-prohibitive, the relator will share
costs provided South Bay presents her with an estimated scope,
time, and expense and the parties can reach agreement on these
parameters.  The relator also reiterated that South Bay should
not be entitled to rely upon Rule 33(d) because the burden on
each party to ascertain the answer to Interrogatory No. 2 would
not be substantially the same.  The relator also contends that
exhibits 7-9 and 16 of South Bay's filing are unclear on who
provided supervision, that South Bay has failed to clarify
whether missing information is being withheld or is not in its
possession, and that South Bay still has not affirmed that the
information the relator seeks in Interrogatory No. 2 is
contained in the documents provided.

**DISCUSSION**

Under Fed. R. Civ. P. 33(d), "[i]f the answer to an
interrogatory may be determined by examining, auditing, compiling,
abstracting, or summarizing a party's business records,  . . . and

if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." This subsection was adopted in 1970 to address interrogatories "which require a party to engage in burdensome or expensive research into his own business records in order to give an answer" and "places the burden of discovery upon its potential benefittee." Fed. R. Civ. P. 33 advisory committee's note (citation omitted). However, to also protect the requesting party, the burden of ascertaining the answer must be substantially the same for both parties, and a responding party may not foist a "mass of records" upon the requesting party that are not feasible for the requesting party to research. *Id*.

A party seeking to rely on Rule 33(d) must satisfy four criteria: (1) it must affirm that the information sought by the requesting party is in fact in the specified records; (2) it must specify the actual documents where information will be found; (3) it must show that answering the interrogatory in the conventional manner would impose a burden on it; and (4) it must show that the burden of deriving the answer from the specified records will be substantially the same for both parties. *Licensed 2 Thrill, L.L.C. v. Rakuten, Inc.*, No. 13-cv-11257-DJC, 2015 WL 13376540, at *3 (D.

Mass. Oct. 13, 2015). Once the producing party satisfies these criteria, the burden shifts to the requesting party to establish that the burden of deriving the answers from the business records is not substantially the same for both parties. *Petroleum Ins. Agency, Inc. v. Hartford Accident & Indem. Co.*, 111 F.R.D. 318, 320 (D. Mass. 1984).

The relator's primary assertion is that South Bay cannot rely on Rule 33(d) because it cannot affirm that the information requested in Interrogatory No. 2 can be found in the records it has produced. The relator claims in particular that work and clinical supervisory information is missing for many employees. The relator also represents that the vast majority of the handwritten supervisory notes are difficult to read and decipher, and that supervisory information is often conflicting.

South Bay responds that while it does not have work or clinical experience histories for all employees, it has provided the relator with everything it does possess in this regard. It also asserts that the handwritten records are the only supervisory records it has prior to 2015, that the "conflicting" supervisor information actually reflects the reality of the layers of supervision involved in mental health settings, and that it has provided the relator with numerous spreadsheets, and even restored data fields to give the relator the tools to answer the interrogatory as expeditiously as South Bay could.

Considering the four criteria here, the court finds on balance that South Bay has properly invoked Rule 33(d).

**1. South Bay's Burden to Satisfy the Criteria of Rule 33(d)**

*a. Affirmation*

The relator complains that South Bay has never affirmed as a technical matter that the answer to Interrogatory No. 2 can be found in the produced records, but the heart of her contention is that South Bay cannot substantively affirm as much answer because the necessary information is not actually in, or cannot be ascertained from the documents provided. She points to the requested work and clinical supervision history for employees as examples of missing information. South Bay indicated at the hearing that while it does not have this information for all employees, it has provided what it possesses, and offered that if such information has been produced, it would most likely be with an employee's supervisory or personnel records.

The relator's frustration over her inability to locate this information is understandable but the evidence indicates that South Bay simply does not have the requested information for many employees. "A responding party is not required to conduct extensive research in order to answer an interrogatory," though "a reasonable effort to respond must be made." *Kaneka Corp. v. Zhejiang Med. Co.*, No. CV 11-2389 SJO (SS), 2016 WL 11266869, at *8 (C.D. Cal. Oct. 18, 2016)(quoting *Gorrell v. Sneath*, 292 F.R.D.

629, 632 (E.D. Cal. 2013)).  If a party cannot provide the requested information, it must state under oath that it is unable to provide the information and set forth the efforts used to obtain the information.  *Id.*  Accordingly, South Bay shall amend its answer to Interrogatory No. 2 to state the efforts it took to attempt to obtain information regarding the work history and clinical supervision experience of the subject employees, and to clarify to the extent possible what such information has been produced.

Concerning information that cannot be ascertained, the relator cites the handwritten supervision records, which she claims are largely indecipherable, and refers in her motion to at least three instances where the last names of supervisors were missing or the signatures were unclear.  She argued further at the hearing that "the vast majority" of supervisory documents were equally unclear.  Mot. Compel 2:42:30-2:42:45 p.m., May 8, 2019, ECF No. 224.

South Bay subsequently provided this court with the entire personnel file from which the relator's examples were taken.  In the court's view, the documents, when reviewed in context, are not as vague as represented.  First, the cover sheet of the employee's file contained the employee's full name, Kristina Lingertat.  The roster spreadsheet (D. 227-3), which the court easily searched in the Excel format provided by South Bay, shows Ms. Lingertat as

having worked in Weymouth. And while only a first name for a supervisor is often given on Ms. Lingertat's individual supervision sheets, the file in its entirety sheds light on full names. Here, for example, the supervisor "Kristin" is listed with a last name on one document, and while it appeared to be "Shendan" to the court, a review of the roster spreadsheet showed a "Kristin Sheridan" as a counselor in Weymouth during the relevant time period. Also, the signature of supervisor "Megan" on several forms was clear enough for the court to look at the roster spreadsheet and determine that the supervisor is "Megan Rohrwasser," also at Weymouth during the relevant time period.

The court admittedly encountered more difficulty using the information to identify the supervisor "Laura," but by searching in the Excel form of the roster for all employees named Laura who also were in Weymouth, the court identified one matching person, "Laura Gaskins," who was a clinical supervisor during the relevant time period.

To be sure, a few documents bore only a signature that was difficult to decipher. That being said, the court found, contrary to the relator's assertion, that the vast majority of documents are quite readily decipherable. Further, narrowing the employees by location, first name, and licensure status is straightforward in the Excel version of the employee roster.

The relator has not submitted any other documents to this court indicating that indecipherable records are more common in other files than they are in Ms. Lingertat's. If South Bay had produced these documents haphazardly, or if the court had evidence indicating that multiple employee files were missing last names or other indicia of identity, this would be a different story. But the evidence submitted indicates that handwritten supervision notes were produced grouped by employee, and that reviewing the documents as a group can resolve many ambiguities.

Further, the relator states that because the handwritten records are unreliable, the human resources reports listing each clinician and supervisor are actually the most accurate statement on whether South Bay provided adequate supervision of unlicensed therapists. These reports were generated every 12 weeks and South Bay has produced 567 such reports. (D. 233, p. 3 n.2). If each of the 18 South Bay facilities issued these reports every 12 weeks, there would be approximately 77-78 reports per year. Thus, the 567 reports represent a range of no less than seven out of the 10 years covered by the interrogatory request. *See Kaneka*, 2016 WL 11266869, at *8 (Rule 33(d) does not require the identification of all documents touching on a request, but only those documents sufficient to provide a complete response).

In sum, the court finds based on the evidence before it that South Bay can affirm that the information the relator seeks is

available in the handwritten records as well as the human resources
reports.

### b. Specificity

While the relator initially contended that South Bay had not
sufficiently identified which batches of documents were responsive
to the various parts of Interrogatory No. 2, the chart South Bay
produced at the hearing appears to have addressed this problem to
a great extent. *See Puerto Rico Aquaduct & Sewer Auth. v. Clow
Corp.*, 108 F.R.D. 304, 307 (D. P.R. 1985) (when responding party
identified documents by serial number, explained how information
could be found, and offered reasonable assistance to requesting
party, responding party met specificity requirement of Rule
33(d)).

The relator still asks that if South Bay intends for this
chart to affirm which documents respond to specific categories of
information requested, it amend its interrogatory response to say
so. The court finds this request reasonable and so orders South
Bay to amend its response.

### c. Burden

South Bay has established that were it compelled to answer
this interrogatory in narrative or even chart form, it would face
a substantial burden. South Bay has estimated that this request
covers 8,000 employees at a minimum. Mot. Compel 2:13:45-2:15:55
p.m., May 8, 2019, ECF No. 224. It is also undisputed that until

2015, South Bay had no centralized computer program for tracking most of the information requested.  South Bay represents that it has already spent hundreds of thousands of dollars in this and related litigation, Mot. Compel 2:31:50-2:32:00 p.m., May 8, 2019, ECF No. 224, and estimates that it would take an average of 700 hours per clinic to provide a narrative response compiling the handwritten records. (D. 212).  The documents South Bay has filed with this court indicate that it has already borne a substantial burden in an attempt to categorize a tremendous volume of information.

<em>d. Whether Parties Face Substantially the Same Burden</em>

Finally, the court finds that South Bay has shown that the burden for either party to compile information from the handwritten records would be substantially the same.  As the records request spans 10 years and 18 facilities with frequent staff turnover (D. 49, ¶ 16), it cannot be assumed that South Bay has a significantly greater familiarity with these records than the relator does. *See, e.g., International Aerospace Group Corp. v. Evans Meridians LTD,* No. 16-24997-Civ-King/Torres, 2017 WL 1927957, at *3 (S.D. Fla. May 10, 2017) (where one party is *substantially* more familiar with the documents at issue burden will generally not be the same)(emphasis added); *Sadofsky v. Fiesta Prods., LLC*, 252 F.R.D. 143, 148 (E.D.N.Y. 2008)(a party's familiarity with documents does not necessarily create disparity precluding use of Rule 33(d)).

In interpreting the handwritten documents, South Bay would likely use the same tools it has provided to the relator —indices in Excel format that can be easily searched for locations, partial names, dates, supervisory status, and other requested information. As noted, the court used these tools and found them quite helpful in clarifying ambiguities.

## 2. The Relator's Obligation to Show that the Burdens are Not Substantially the Same

In arguing that the burden of reviewing the handwritten supervisory notes is not substantially the same for both parties, the relator points the court to several decisions where courts placed weight on the producing party's better familiarity with its own records. *See Al Barnett & Son, Inc. v. Outboard Marine Corp*., 611 F.2d 32 (3d Cir. 1979); *Sabel v. Mead Johnson & Co*., 110 F.R.D. 553 (D. Mass. 1986); *Riverfront Landing Phase II Owners' Ass'n v. Assurance Co.,* No. C08-0656RSL, 2008 WL 11344626 (W.D. Wash. Dec. 16, 2008). None of these cases compels a similar finding here, however.

In *Barnett*, the Third Circuit affirmed a district court's decision declining to allow the responding party to invoke Rule 33(c) where the party, according to the court, was more familiar with its own books and records and consequently the burden of extracting information would not be substantially the same for the parties. *Barnett,* 611 F.3d at 35 n.8. This court has no basis to

question the merits of the lower court's decision in *Barnett* but the case is not particularly illustrative here where this court does not, on this record, view South Bay as being self-evidently substantially better positioned to resolve ambiguities in the record.

*Sabel* involved the defendant company's production of 154,000 pages of documents in response to an interrogatory from an allegedly injured consumer about the amount of a drug it had manufactured. After using an index prepared by the defendant to try and extract information, the court concluded that the defendant's employees were in a better position than the plaintiff to extract the information. *Sabel,* 110 F.R.D. at 556. However, the court rejected the argument that a party's familiarity with its own records will always result in a burden that is not substantially equal. "While an interrogated party will always be more familiar with its own records than the interrogating party, familiarity with the records cannot be the sole test. The inquiry is whether the relative burdens are *substantially* the same, not whether they are precisely equal." *Id.* at 556. As noted, this court views the parties' respective burdens as substantially the same.

*Riverfront Landing* involved a homeowners' association's bad faith failure to insure a claim against Assurance, which insured a subcontractor against whom the association had obtained a

judgment. 2008 WL 11344626, at *1. In response to the association's interrogatory asking Assurance to identify all persons with knowledge of facts relating to the subcontractor's claim, Assurance referred the association to the 700-page claims file. *Id.* at *2. The court found that the burden of ascertaining the names would be much higher on the association than the insurance company, which could more readily identify who was involved with the claim. "Even if defendant would have to supplement its knowledge by reading through the 700-page document, defendant has not offered any justification for shifting that burden onto plaintiff." *Id.* Here, the volume of documents is exponentially higher, and like the court in *Sabel*, this court used the indices South Bay provided to determine how burdensome it would be to work through a handwritten file, and found the computer versions of the indices quite helpful in reviewing the materials before it.

Moreover, courts have recognized that Rule 33(d) is best suited to interrogatories of an objective nature that require compilation of information. *See, e.g., United Oil Co. v. Parts Assocs., Inc.*, 227 F.R.D. 404, 419 (D. Md. 2005); *accord RE/MAX v. Quicken Loans Inc.*, Civ. A. No. 16-cv-02357, 2017 WL 7355299, at *4 (D. Colo. 2017); *Ayers v. Continental Cas. Co.*, 240 F.R.D. 216, 226 (N.D. W.Va. 2007). That is the case here; Interrogatory No. 2 is framed as a compilation rather than contention interrogatory.

In light of the foregoing, the court finds that the relator has not met her burden of showing that it will be substantially more burdensome for her to evaluate the handwritten records than it would be for South Bay to evaluate them. South Bay is thus entitled to invoke Rule 33(d). *See Sadofsky,* 252 F.R.D. at 148 (where no unequal burden exists, court will allow responding party to produce records, even if interrogating party must examine multiple documents to ascertain answer); *Mid-America Facilities, Inc. v. Argonaut Ins. Co.*, 78 F.R.D. 497, 498 (E.D. Wisc. 1978) (even where the requesting party was likely to need 30 days to go through records, burden was substantially equal and would be placed upon requesting party).

Turning to the relator's other objections, she contends that various spreadsheets provided by South Bay have confusing and conflicting information regarding "supervisors." (D. 227-7, -8, -9, and -16). In particular, she claims she cannot ascertain which supervisors South Bay contends provided the direct and continuous supervision to unlicensed clinicians required by law.

Regarding Documents 227-7, 227-9, and 227-16, it appears to the court that the column marked "licensed supervisor" most likely contains the name of the individual whom South Bay claims provided the requisite supervision, but South Bay, to remove any doubt, is hereby directed to clarify which column identifies the supervisor supplying direct and continuous supervision. Similarly, the court

notes that there are several blank fields in these documents and also directs South Bay to explain why information is missing from these fields. Lastly on these particular documents, the court observes that the documents appear to have been generated on August 31, 2018, and reminds South Bay of its obligation to update this information as warranted.

Turning to Document 227-8, the court understands that the information highlighted in yellow is the restored data that was overwritten by the Credible program. The court also grasps that the last tab of this document shows when a change to the supervisor data was made, and by whom. But the court shares the relator's confusion as to how the last tab relates to the previous tabs for interpretation. South Bay is thus ordered to provide a more thorough explanation of how to interpret this chart, including specific client examples where the supervisor fields changed and how the relator can determine the order of supervisors and the date(s) when changes occurred. South Bay shall also explain blank fields in this document.

The relator also contends that it is unclear where documents are missing whether South Bay has withheld them or whether it simply does not have them. South Bay is accordingly required to amend its interrogatory answer to state with as much specificity as possible what documents or information it does not have in its possession.

Finally, the relator acknowledges that South Bay's counsel may have verbally affirmed that the documents provided in response to Interrogatory No. 2 contain the information sought by relator but argues that it is the responding party who must so affirm. The court agrees and South Bay therefore shall amend its answer to Interrogatory No. 2 to make clear that the party is affirming that the documents and information provided contain the information sought by the interrogatory.

**CONCLUSION**

The motion to compel (D. 207) is **GRANTED IN PART and DENIED IN PART.** The request that South Bay be compelled to provide a written narrative or table-form answer to Interrogatory No. 2 is **DENIED.** However, South Bay shall and is hereby **ORDERED** to amend its answer to Interrogatory No. 2 consistent with the foregoing discussion. More specifically, South Bay shall:

1. Indicate the subsection(s) of Interrogatory No. 2 to which Document No. 227-2 is responsive;

2. Clarify to the extent possible what employee work history and clinical supervision records it has produced, what records it has not produced, and whether the unproduced records are being withheld or are not in its possession;

3. State the efforts undertaken to obtain requested information on employee work history and clinical supervision;

4. Identify in Document Nos. D. 227-7, 227-8, 227-9, and 227-16 which column or columns contain the name of the supervisor providing "direct and continuous supervision" as required by 130 C.M.R. § 429.424, and explain the reason for the missing field information in Document Nos. D. 227-7, 227-8, 227-9, and 227-16;

5. Explain Document No. 227-8 more thoroughly to clarify how the last tab of this document relates to the other tabs and how the relator can use the last tab to determine when the licensed supervisor changed for a particular clinician. South Bay shall provide the relator with at least two specific examples of how to ascertain a supervisor change for a particular clinician;

6. Specify whether responsive documents or information that has not been produced is being withheld based on privilege (also specifying the privilege) or is not in its possession; and

7. Provide the required affirmation under Rule 33 from the party.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

**_SO ORDERED._**

DATED: July 23, 2019